Case: 2:15-cv-03022-MHW-TPK Doc #: 2 Filed: 11/30/15 Page: 1 of 31 PAGEID #: 663
Franklin County Ohio Clerk of Courts of the Common Pleas- 2015 Oct 29 2:00 PM-15CV009498
0C739 - P34

## IN THE COMMON PLEAS COURT OF FRANKLIN COUNTY, OHIO

| | |
|---|---|
| **EMPIRE ADVISORS, LLC**<br>**500 South Front Street**<br>**Suite 1200**<br>**Columbus, Ohio 43215,** | :<br>:<br>:<br>: |
| | : **Case No.** |
| **Plaintiff,** | :<br>: |
| | : **Judge** |
| **v.** | :<br>: |
| **CSA BIOTECHNOLOGIES, LLC**<br>**c/o Incorp Services, Inc., Regd. Agent**<br>**2360 Corporate Circle**<br>**Suite 400**<br>**Henderson, Nevada 89074-7739** | :<br>:<br>:<br>:<br>: **JURY DEMAND** |
| | : **ENDORSED HEREON** |
| **and** | :<br>: |
| **N8 PHARMACEUTICALS, INC.**<br>**c/o Incorp Services, Inc., Regd. Agent**<br>**2360 Corporate Circle**<br>**Suite 400**<br>**Henderson, Nevada 89074-7739** | :<br>:<br>:<br>:<br>: |
| | : |
| **and** | :<br>: |
| **FAE HOLDINGS 364974R, LLC**<br>**c/o Jace Sanders, Regd. Agent**<br>**3298 North Main Street**<br>**Spanish Fork, Utah 84660** | :<br>:<br>:<br>: |
| | : |
| **and** | :<br>: |
| **BOVINE BIOTECH, LLC**<br>**c/o Jace Sanders, Registered Agent**<br>**826 North 100 East #7**<br>**Spanish Fork, Utah 84660** | :<br>:<br>:<br>: |
| | : |
| **and** | :<br>: |
| **CSA BIOTECH MANAGERS, LLC**<br>**c/o Incorp Services, Inc., Regd. Agent**<br>**2360 Corporate Circle**<br>**Suite 400**<br>**Henderson, Nevada 89074-7739** | :<br>:<br>:<br>:<br>: |
| | : |
| **and** | : |



EXHIBIT

2

CERAGYN, LLC                                  :
c/o Incorp Services, Inc., Regd. Agent        :
2360 Corporate Circle                         :
Suite 400                                     :
Henderson, Nevada 89074-7739                  :
                                              :
     and                                          :
                                              :
BEUS INVESTMENTS, LLC                         :
c/o Incorp Services, Inc., Regd. Agent        :
2360 Corporate Circle                         :
Suite 400                                     :
Henderson, Nevada 89074-7739                  :
                                              :
     and                                          :
                                              :
HIGH DESERT ENTERPRISES, LLC                  :
c/o Jonathan S Heaton, Regd. Agent            :
1871 North 1740 West                          :
Provo, Utah 84604                             :
                                              :
     and                                          :
                                              :
WESDON FINANCIAL, L.L.C.                      :
c/o Michael Moore, Regd. Agent                :
21387 East Exlelsion Road                     :
Queen Creek, Arizona 85142                    :
                                              :
     and                                          :
                                              :
MARLA K. ROBINSON FAMILY TRUST                :
6663 South Lincoln Beach Road                 :
Spanish Fork, Utah 84660                      :
                                              :
     and                                          :
                                              :
MICHAEL C. MOORE, an individual               :
c/o CSA BioTechnologies, LLC                  :
826 North 100 East #7                         :
Spanish Fork, Utah 84660                      :
                                              :
     and                                          :
                                              :
LANCE ROBINSON, an individual                 :
c/o CSA BioTechnologies, LLC                  :
826 North 100 East #7                         :
Spanish Fork, Utah 84660                      :

**and**                                          :
                                                 :
**CHAD BEUS, an individual**                     :
**c/o CSA BioTechnologies, LLC**                 :
**826 North 100 East #7**                        :
**Spanish Fork, Utah 84660,**                    :
                                                 :
       **Defendants.**                     :


## COMPLAINT

This is an action brought by Plaintiff, Empire Advisors, LLC, against Defendants for their numerous breaches and violations of the provisions of and promises, covenants, representations and warranties contained in: (i) the "Release Agreement" (as defined below); (ii) the "Bovine Warrant" (hereafter the "Warrant" and as further defined below); (iii) the "Side Letter Agreement" (as defined below) that delivered the Warrant to Plaintiff; and (iv) the "Loan Agreement" (as defined below) which delivered the Side Letter Agreement and Warrant to Plaintiff (the Release Agreement, Warrant, Side Letter Agreement, and Loan Agreement are collectively the "Agreements").

Defendants also committed fraud, made several material fraudulent and negligent misrepresentations in connection with the Agreements, upon which Plaintiff relied, and engaged in various actions and omissions that caused significant harm to Plaintiff as well as devalued the Warrant. As a direct and proximate result of Defendants conduct and substantial and material breaches of the Agreements, as well as Defendants material negligent and fraudulent actions and misrepresentations in connection with the Agreements, Plaintiff seeks the following monetary damages and equitable relief.

## THE PARTIES

1.     Plaintiff, Empire Advisors, LLC, is a limited liability company organized and existing under the laws of the State of Ohio with its headquarters and principal place of business in Columbus, Ohio.  Plaintiff is the management entity for its midmarket private equity and venture funds that opportunistically invest in a broad range of business sectors in debt, equity and mixed transactions.

3.     Upon information and belief, Defendant, CSA Biotechnologies, LLC ("CSA Biotech"), is a limited liability company organized and existing under the laws of the State of Nevada with its headquarters and principal place of business located in Spanish Fork, Utah. CSA Biotech entered into, warranted, and agreed to the relevant terms of the Agreements at issue and has failed to honor certain of its promises, representations, covenants, obligations, and warranties thereunder.

4.     Upon information and belief, Defendant, N8 Pharmaceuticals, Inc. ("N8 Pharma"), is a corporation organized and existing under the laws of the State of Nevada and an affiliate or subsidiary of CSA Biotech.  On June 4, 2012, CSA Biotech purchased all the shares of N8 Pharma, and N8 Pharma became a 100% owned subsidiary and/or affiliate of CSA Biotech.  Since CSA Biotech purchased all of the shares of N8 Pharma, N8 Pharma entered into, warranted, and agreed to the relevant terms of the Agreements at issue and has failed to honor certain of its promises, representations, covenants, obligations, and warranties thereunder.

5.     Upon information and belief, Defendant, FAE Holdings 364974R, LLC ("FAE"), is limited liability company organized and existing under the laws of the State of Utah with its headquarters and principal place of business in Chandler, Arizona.  FAE entered into, warranted,

- 4 -

and agreed to the relevant terms of the Agreements at issue and has failed to honor certain of its promises, representations, covenants, obligations, and warranties thereunder.

6.      Upon information and belief, Defendant, Bovine Biotech, LLC ("Bovine Biotech"), is a limited liability company organized and existing under the laws of that State of Utah with its headquarters and principal place of business in Spanish Fork, Utah. Plaintiff was delivered the Warrant (aka the "Bovine Warrant") in Bovine Biotech under the Side Letter Agreement. Bovine Biotech entered into, warranted, and agreed to the relevant terms of the Agreements at issue and has failed to honor certain of its promises, representations, covenants, obligations, and warranties thereunder.

7.      Upon information and belief, Defendant, Ceragyn, LLC ("Ceragyn"), is a limited liability company organized and existing under the laws of that State of Nevada with its headquarters and principal place of business in Spanish Fork, Utah. Ceragyn is a 100% wholly owned subsidiary of CSA Biotech. Ceragyn entered into, warranted, and agreed to the relevant terms of the Agreements at issue and has failed to honor certain of its promises, representations, covenants, obligations, and warranties thereunder.

8.      Upon information and belief, Defendant, CSA Biotech Managers, LLC ("CSA Managers"), is a limited liability company organized and existing under the laws of that State of Nevada with its headquarters and principal place of business in Spanish Fork, Utah. CSA Managers entered into, warranted, and agreed to the relevant terms of the Agreements at issue and has failed to honor certain of its promises, representations, covenants, obligations, and warranties thereunder. Upon information and belief, CSA Biotech Managers, LLC is the Managing Member of CSA Biotech, Ceragyn, LLC and possibly other Defendants.

9.      Upon information and belief, Defendant, Beus Investments, LLC ("BI"), is a limited liability company organized and existing under the laws of that State of Nevada with its

Franklin County Ohio Clerk of Courts of the Common Pleas- 2015 Oct 23 2:00 PM-15CV009498
Case: 2:15-cv-03022-MHW-TPK Doc #: 2 Filed: 11/29/15 Page: 6 of 31 PAGEID #: 868

headquarters and principal place of business in Spanish Fork, Utah. BI entered into, warranted, and agreed to the relevant terms of the Agreements at issue and has failed to honor certain of its promises, representations, covenants, obligations, and warranties thereunder.

10. Upon information and belief, Defendant High Desert Enterprises, LLC ("High Desert"), a is limited liability company organized and existing under the laws of the State of Utah with its headquarters and principal place of business in Spanish Fork, Utah. High Desert entered into, warranted, and agreed to the relevant terms of the Agreements at issue and has failed to honor certain of its promises, representations, covenants, obligations, and warranties thereunder.

11. Upon information and belief, Defendant Wesdon Financial, LLC ("Wesdon") is a limited liability company organized and existing under the laws of the State of Arizona with its headquarters and principal place of business in Queen Creek, Arizona. Wesdon entered into, warranted, and agreed to the relevant terms of the Agreements at issue and has failed to honor certain of its promises, representations, covenants, obligations, and warranties thereunder.

12. Defendant, Marla K. Robinson Family Trust ("Robinson FT") is a trust organized and existing under the laws of the State of Utah. Robinson FT entered into, warranted, and agreed to the relevant terms of the Agreements at issue and has failed to honor certain of its promises, representations, covenants, obligations, and warranties thereunder.

13. Upon information and belief, Defendant, Michael C. Moore ("Moore"), an individual, is a resident of Arizona and owner, member and/or officer of CSA Biotech, N8 Pharma, CSA Managers, and Wesdon. Moore individually executed entered into, warranted, and agreed to the relevant terms of the Agreements at issue and has failed to honor certain of its promises, representations, covenants, obligations, and warranties thereunder.

14.     Upon information and belief, Defendant, Lance Robinson ("Robinson"), an individual, is a resident of Utah and owner, member, and/or officer of CSA Biotech, CSA Managers and N8 Pharma. Robinson is also a beneficiary of the Robinson FT.  Robinson individually executed entered into, warranted, and agreed to the relevant terms of the Agreements at issue and has failed to honor certain of its promises, representations, covenants, obligations, and warranties thereunder.

15.     Upon information and belief, Defendant, Chad Beus ("Beus"), an individual, is a resident of Utah and owner, member and/or officer of CSA Biotech, BI and N8 Pharma. Beus individually executed entered into, warranted, and agreed to the relevant terms of the Agreements at issue and has failed to honor certain of its promises, representations, covenants, obligations, and warranties thereunder.

## JURISDICTION AND VENUE

16.     The Court has jurisdiction over this case for many reasons, including, but not limited to because: (i) Defendants have certain minimum contacts with Ohio, (ii) Defendants did business with Plaintiff in Ohio; (iii) Defendants obtained a financing from Plaintiff in Ohio; (iv) made various promises, representations, and warranties to Plaintiff in Ohio; (v) breached various promises, representations, and warranties to Plaintiff in Ohio (vi) Plaintiff's business is located in Ohio; (vii) the Agreements were executed and entered into, in part, in Ohio; (viii) Defendants offered securities to Plaintiff in Ohio, and (ix) and Defendants have consented to the jurisdiction of the courts of The State of Ohio, including this Court, under the most recent agreement related to matters hereunder, the Release Agreement.

17.     Venue is proper in Franklin County and this Court under the express terms of the Release Agreement, which establishes the Columbus, Ohio as the appropriate venue to pursue any dispute thereunder, as well as under Ohio Civ. R. (B)(3), because Franklin County, Ohio is

Case: 2:15-cv-03022-MHW-TPK Doc #: 2 Filed: 11/28/15 Page: 8 of 31 PAGEID #: 70

the county in which Defendants conducted activity that gave rise to Plaintiff's claim for relief; (B)(6) because Franklin County, Ohio is a county in which all or part of Plaintiff's claim for relief arose; and (B)(7) because Franklin County, Ohio is the county where Plaintiff resides. Alternatively, venue is proper in this Court because Franklin County, Ohio is the county in which Plaintiff resides, has its principal place of business, and regularly and systematically conducts business activity. Venue is also proper in this Court because the Defendants consented to venue in the courts of The State of Ohio, including this Court, under the most recent Agreement related to matters hereunder, the Release Agreement.

## BACKGROUND

18.     As mentioned above, Plaintiff is the management entity for its midmarket private equity and venture funds that invest in a broad range of business, as well as provides debt and equity financing. One of Plaintiff's ventures relates to its investors' investment in N8 Medical, Inc. ("N8 Medical"), which is a biopharmaceutical/medical device company focused on the research and commercial development of "ceragenins," which have broad-spectrum antimicrobial activity, as well as numerous other therapeutic activities and attributes of value in healthcare applications.

19.     Namely, in 2010, N8 Medical obtained an *exclusive* license and interest from Brigham Young University ("BYU") for the commercial development of ceragenins in certain specified applications and fields of use.

20.     Prior to June 2012, N8 Medical sublicensed certain of its rights and economic interests to N8 Pharma.

21.     However, as of August 3, 2012, pursuant to a certain Stock Purchase Agreement dated June 4, 2012, as amended ("Securities Purchase Agreement"), CSA Biotech purchased all the shares of N8 Pharma, a related company to N8 Medical, and the parties' respective license

agreements with BYU were amended such that N8 Medical held exclusive rights for the commercial development of ceragenins in certain specified applications and fields of use and N8 Pharma held separate and distinct  exclusive rights for the commercial development of ceragenins in certain specified applications and fields of use.[1]

22.     The Securities Purchase Agreement, through which CSA Biotech purchased the shares of N8 Pharma, is a lengthy agreement that is largely irrelevant to the material aspects of this case.  In relevant part, however, it is important to note that the Securities Purchase Agreement, as originally executed, provided a loan to and obligated CSA Biotech and certain other of the Defendants to pay N8 Medical, a wholly owned subsidiary and/or affiliate of Plaintiff, approximately $13 million.[2]

23.     In early 2013, following an initial extension of payments owed under the Securities Purchase Agreement, CSA Biotech approached Plaintiff about its and other Defendants ability to make certain upcoming payments owed under the Securities Purchase Agreement, as amended, and requested Plaintiff assist with financing and extending the outstanding obligations of CSA Biotech and/or certain other of the Defendants had under the Securities Purchase Agreement, as amended.  In total, CSA Biotech requested Plaintiff assist with financing and extending approximately $10 million in payments CSA Biotech and/or

---

[1]     CSA Biotech (though itself and affiliates and subsidiaries) also holds a license from BYU for the commercialization of ceragenins in certain specified applications and fields of use *not* held by N8 Medical.

[2]     The Securities Purchase Agreement was later amended by the (i) "First Amendment to Securities Purchase Agreement," (ii) the "Second Amendment to Securities Purchase Agreement," and (iii) finally, in relevant part, a "Letter Amendment," dated December 31, 2012, to, among other things, increase the obligations Defendants owed under the Securities Purchase Agreement, provide certain rights to N8 Medical and provide certain additional time for Defendants to pay the loan and obligations thereunder.

certain other of the Defendants owed under the Securities Purchase Agreement, but were unable to timely pay without financing from Plaintiff.[3]

**The Loan Agreement, Side Letter Agreement And
Delivery Of Warrants To Plaintiff**

24.    Plaintiff agreed to explore financing options to enable CSA Biotech and other Defendants to meet its obligations under the Securities Purchase Agreement, as amended.

25.    Initially, the parties negotiated and agreed upon a non-binding term sheet for such financing.

26.    Thereafter, in May 2013, pursuant to the terms of an Amended Loan Agreement dated June 15, 2013 ("Loan Agreement"), which is attached hereto as Exhibit A and incorporated by reference, Plaintiff proceeded to manage, place, and provide the approximately $10 million financing to CSA Biotech and certain other of the Defendants required to satisfy their obligations under the Securities Purchase Agreement, as amended.

27.    The Loan Agreement amended portions of the Securities Purchase Agreement with respect to some of Defendants' payment and loan obligations thereunder.

28.    As a requirement of the Loan Agreement, and as material and fundamental consideration for the extension and modification of the payments and loan obligations under the Securities Purchase Agreement, as amended, all the Defendants executed the Loan Agreement and provided various promises, representations, and warranties to Plaintiff.

29.    Additionally, and simultaneously in connection with the successful arrangement of the financing and payment extensions under the Loan Agreement, Plaintiff and all the Defendants entered into the "Side Letter Agreement," which delivered the "Warrant" to Plaintiff.

---

[3]    Defendants made efforts to pursue other avenues of financing the amounts owed pursuant to the Securities Purchase Agreement, but were unable to procure any other sources of this financing.

30.     Executing and entering into the Side Letter Agreement and delivering the Warrant to Plaintiff were material and fundamental conditions of and consideration under the Loan Agreement.

31.     As material and fundamental consideration under Loan Agreement and Side Letter Agreement, the Warrant was to be delivered to Plaintiff, which was done under the Side Letter Agreement.

32.     Particularly, under the Side Letter Agreement, CSA Biotech "agreed, and hereby agrees … grant and/or deliver to [Plaintiff] the following [Warrant] in connection with the execution hereof and the Amended Loan Agreement:"

> Five-year warrants on the terms, and with the rights and protections, set forth below and attached hereto, which per the Amended Loan Agreement shall approximate […] and (ii) an equity interest June 15, 2013 that is equivalent to a 3% voting equity interest (consisting of the most senior or desirable equity interests), on a fully-diluted basis, in Bovine at a strike price and on the terms and in the form as forth in the form warrant attached hereto as Exhibit A and incorporated herein by this reference (the "**Bovine Warrant**," and together with the Urology Warrant, the "**Warrants**").

Side Letter Agreement, <u>Exhibit B</u> at p. 1-2, Section 2, Warrants.

33.     In other words, Defendants agreed to and did deliver the Warrant, among other warrants and consideration, to Plaintiff under the Loan Agreement and Side Letter Agreement. A copy of the the Warrant delivered to Plaintiff is attached hereto as <u>Exhibit C</u> and incorporated hereunder by reference.

34.     With respect to the Warrant delivered to Plaintiff, Defendants made various material representations, promises, warranties, and covenants to Plaintiff, upon which Plaintiff relied and represented to its investors.

35. All the various material representations, promises, warranties, and covenants Defendants made to Plaintiff were material and fundamental to the transaction and relied upon by Plaintiff when deciding to provide and arrange the requested financing under the Loan Agreement and Side Letter Agreement.

<u>**Representations, Promises, Warranties, and Covenants Provided to Plaintiff Under The Loan Agreement, Side Letter Agreement And Warrant**</u>

36. The Loan Agreement, Side Letter Agreement and Warrant contain many material representations and warranties to Plaintiff.

37. First, under the Loan Agreement, Defendants represented and warranted that they have "all necessary power and authority" to complete and effectuate the transaction contemplated under each of the Loan Agreement, Side Letter Agreement, and Warrant, as well as to "to grant the rights granted" to Plaintiff "and perform its obligations" under the Loan Agreement, Side Letter Agreement, an Warrant.

38. Further Defendants represented that (i) Bovine Biotech "holds, ***and shall continue to hold***, the rights on a world-wide, exclusive basis, to all rights for the treatment of bovine mastitis" using ceragenin or CSA compounds" ("Bovine Rights"), as well as (ii) numerous other matters with respect to the Warrant and the business of Bovine Biotech as further detailed in the Agreements.

39. Based on Defendants' above representations, Plaintiff determined the Warrant, among other consideration, was sufficient consideration in exchange for the financing and the services Plaintiff provided under the Loan Agreement and Side Letter Agreement.

40. Particularly, the Warrant provided Plaintiff the right to purchase equity interests in a Bovine Biotech as a set price. Plaintiff specifically accepted the Warrant and the price in the

Warrant because of Defendants representations, warranties, covenants, promises and rights regarding the the business of Bovine Biotech, Bovine Rights and the Warrant.

     41.    Indeed, the Side Letter Agreement delivered in connection with the Loan Agreement stated:

> (b)   <u>Warrant Issuer Ownership of Rights</u>. [Plaintiff] is accepting the Warrants in Bovine and Urology because such entities are the licensees of rights for ceragenin compounds and technology as represented and described to [Plaintiff]. If Company [transfers] its rights to such technology held by the Warrant issuer to any subsidiary, series member, affiliate or other entity directly or indirectly controlled by such company or its affiliates …, the Warrant shall extend and apply in full, with respect to such entity and maintain the intended economic benefit granted hereunder.

     42.    Further, the Side Letter Agreement delivered in connection with the Loan Agreement stated:

> (c)   <u>Incorporation of Certain Provisions and Protections</u>. The following terms, conditions, provisions and protections are hereby incorporated herein by this reference:
>
> (i) Those set forth in the Warrants;
>
> (ii) Those set forth in the [Loan Agreement] that apply to the Pledged Equity and/or Warrants, or CSAB, Urology or Bovine, which shall apply with equal force and effect with respect to the Warrants; and
>
> (iii) The representations, warranties and covenants set forth in the [Loan Agreement] with respect to the Warrants.

     43.    Thus, all the representations, warranties covenants, promises and rights provided by Defendants to Plaintiff under the Warrant and Loan Agreement related to or material to the Warrant, were incorporated under and included in the Side Letter Agreement.

     44.    Finally, the Loan Agreement and Side Letter Agreement contained numerous protections for the value of the Warrant, as well as non-circumvention clauses, wherein Defendants -- and CSA Biotech as the managing entity and manager controlling the affairs of

Bovine Biotech -- agreed and expressly covenanted to: (i) avoid and refrain from taking any action to "avoid or seek to avoid the observance or performance of any of the terms of" the Side Letter Agreement, Loan Agreement, or Warrant and "the intended economic and equitable benefits and rights granted" to Plaintiff under the Warrant; (ii) at all times, act in good faith and take all action as may be required to ensure, among other things, Plaintiff's (a) rights and benefits granted under the Side Letter Agreement were protected, and (b) the rights and benefits granted under the Warrant were protected, not diluted or devalued, and the Warrant's marketability was not affected.

45.     Unfortunately, however, since the Warrant was delivered to Plaintiff,  it has become apparent that: (i) Defendants have materially and substantially violated the terms, representations, warranties, covenants, promises and rights provided to Plaintiff in connection with the delivery of the Warrant under the Side Letter Agreement; (ii) have impermissibly and improperly taken potentially irreversible actions that have devalued and/or decreased the value of the Warrant; and (iii) negligently, recklessly, and knowingly made false statements and material misrepresentations to Plaintiff: (a) to induce Plaintiff to enter into the Loan Agreement and Side Letter Agreement; (b) regarding the representations and warranties made to Plaintiff in connection with the Warrant, the Loan Agreement and Side Letter Agreement; (c) regarding certain business transactions that materially impact the Warrant and its value; and (d) to induce Plaintiff to enter into the Release Agreement.

46.     Namely, pursuant to the provisions of the Warrant, Loan Agreement, and Side Letter Agreement, Defendants could not take any action or fail to take any action (or allow any third party to take any action or fail to take any action) that would (i) cause any of the representations and warranties made to Plaintiff to become untrue, (ii) in any way impair, impede, limit, affect or encumber the Warrant or Bovine Rights, (iii) transfer or in any way

encumber their ownership related to the Warrant or Bovine Rights; or (iv) violate any provision of the Warrant.

47.     The above probations also preclude Defendants from, among other things, (i) entering into any into a "Fundamental Transaction" (as defined in the Agreements) related to the Warrants without Plaintiff's approval thereof and assumption by the successor entity of the Warrant; (ii) transferring or causing to be transferred the Bovine Rights, including to a different operating business; (iii) entering into a company sale, material transaction, or initial public offering without Plaintiff's approval and ensuring the Warrant is not impacted and/or addressed for Plaintiff's benefit as part of such transaction; (iv) issuing superior equity classes to the Warrant as part of ant Fundamental Transaction, sale, material transaction, or initial public offering; or (v) circumvent, avoid, dilute, or devalue, in any way, the Warrant or rights thereunder as part of any through any transaction or scheme.

48.     All the forgoing negotiated representations, warranties, covenants, promises, provisions, and protections, among others in the Agreements, provided substantial value to the Warrant. They were also specifically designed to ensure that the value of Bovine Biotech, as the holder of the Bovine Rights, and Plaintiff's Warrant in such entity, would retain their value, not devalue, and would not be damaged or eviscerated in anyway by any Fundamental Transaction, sale, material transaction, initial public offering, or corporate scheme.

49.     All of the foregoing representations, promises, covenants provisions, and agreements were again confirmed to Plaintiff this year by CSA Biotech in the Release Agreement, which states:

> CSAB warrants and represents (a) that the Central Transaction or the consummation thereof did not breach any material term of the warrants in Bovine Biotech, LLC provided to Empire in connection with the Loan Agreement or agreement with respect thereto … or the Holders' interests therein; and (b) that the Bovine

Warrants shall continue in full force and effect pursuant to the terms thereof.

The Release Agreement further states:

This Agreement and any dispute arising therefrom shall be governed by the laws of the state of Ohio, including all applicable choice of law principles, and venue for any such matters shall be Columbus, Ohio.

## Harm to the Warrant By the Central Transaction

50.     In November 2014, Plaintiff received notice that Bovine Biotech intended to enter in to a "Fundamental Transaction," as defined in the Bovine Warrant, with Central Garden & Pet Company ("Central Fundamental Transaction").

51.     Following receipt of the notice regarding the Central Fundamental Transaction, Plaintiff requested copies of all documentation relating thereto, which was permitted and required pursuant to the Agreements.

52.     If after receiving copies of all necessary documentation regarding the Central Fundamental Transaction, such documentation adequately dealt with and properly and fairly protected or treated Plaintiff's rights in the Warrant, Plaintiff planned on approving the Central Fundamental Transaction.

53.     In response to Plaintiff's request for information regarding the Central Fundamental Transaction, however, Defendants provided a limited subset of the required documents, and the documents produced were not even in final form.

54.     Moreover, it was apparent from the documents produced that the Central Fundamental Transaction materially and substantially violated the Loan Agreement, Warrant, and Side Letter Agreement.

55.     The Central Fundamental Transaction as proposed, upon information and belief, was designed in an attempt to result in and/or permit the circumvention or avoidance of

0C739 - 250
Franklin County Ohio Clerk of Courts of the Common Pleas- 2015 Oct 28 3:00 PM-15CV009498
Case: 2:15-cv-03022-MHW-TPK Doc #: 2 Filed: 11/26/15 Page: 17 of 31 PAGEID #: 879

Defendants' obligations to Plaintiff (and potentially to its licensor of the ceragenin technology, Brigham Young University ("BYU")).

56. Particularly, as the Central Fundamental Transaction was structured when Plaintiff reviewed the above referenced partial information it received, Bovine Biotech would create a new entity with CSA Biotech named "CSA Animal Partners, LLC" ("CSA Animal Partners").

     a. Bovine Biotech would hold a 5% equity interest in CSA Animal Partners and CSA Biotech Biotech would hold a 95% equity interest in CSA Animal Partners.

     b. Bovine Biotech would then contribute all of the Bovine Rights to CSA Animal Partners, and CSA Biotech would contribute all its rights to use ceragenins in other animal health fields of use to CSA Animal Partners.

     c. CSA Animal Partners would then form another new entity with Central Garden & Pet Company ("Central") in order to enter into a joint venture. The joint venture between CSA Animal Partners and Central was named "Ceragenin Animal Health, LLC" (the "Central JV").

     d. The Central JV would in turn be transferred and hold all of the rights to use ceragenins held by CSA Animal Partners, including the Bovine Rights which provided all the value to the Warrant.

57. In exchange for CSA Animal Partners[4] "contributing" the Bovine Rights and its rights to use ceragenins in the animal health field to the Central JV, CSA Animal Partners received 50% equity interest in the Central JV.

---

[4] The entity that CSA Biotech and Bovine Biotech created and transferred it rights in exchange for an equity interest therein.

58.     Upon information and belief, Central received a 50% equity interest in the Central JV for providing approximately $20 million of consideration to CSA Animal Partners, a substantial part of which consideration was related to CSA Animal Partners contribution of the the Bovine Rights.

59.     Under the Central Fundamental Transaction, Bovine Biotech, the entity in which Plaintiff had the Warrant, simply planned to hold a 5% interest in CSA Animal Partners and transfer and forfeit all the Bovine Rights to the Central JV.  In other words, the Central JV would obtain all the Bovine Rights, and Bovine Biotech would become a non-operating holding company whereas the Central JV would be the operating business now holding and commercially pursuing the Bovine Rights.  This clearly violated the existing Agreements.

60.     If the above was not confusing enough, finally, under the Central Fundamental Transaction a CSA Biotech-controlled company named "Diamond Fork Enterprises, LLC" ("Diamond Fork") would be the technical new license holder from BYU for the Bovine Rights and other animal health field of use rights to ceragenins "contributed" by CSA Biotech and Bovine Biotech to CSA Animal Partners, who in then would contribute the rights to the Central JV.[5]

61.     In other words, the proposed documentation provided to Plaintiff by Defendants violated the Loan Agreement, Side Letter Agreement, and Warrant because, among other things, it:  (i) provided that the Central JV be transferred and/or directly license all the Bovine Rights; (ii) required that Bovine Biotech hold an indirect beneficial interest in the Central JV several

---

[5]     This would occur by Diamond Fork entering into a new license agreement with BYU for all animal health rights, including the Bovine Rights, and in turn sublicense such rights to CSA Animal Partners, and then sublicense such rights to the Central JV.  Significantly, the Diamond Fork license rights would be more onerous to the Central JV than prior license agreements with respect to such rights, and BYU would take a 10% equity ownership position in Diamond Fork.

degrees removed from the operating business and management structure, thereby placing Bovine Biotech in a non-operating passive holding company position with respect to the Bovine Rights and attempting to effectively reduce, eliminate or remove all rights that Plaintiff had negotiated to protect the Warrant; (iii) reduced Bovine Biotech's and the Warrant's economic interests in the Bovine Rights by at least 50%; (iv) devalued the Warrant and all of Plaintiffs rights and protections with respect to the Warrant; (v) transferred the Bovine Rights to the Central JV without Bovine Biotech receiving any of the the $20 million Central agreed to pay in connection with the Central Fundamental Transaction; and (vii) effectively circumvented, eviscerated and avoided all of the protections and rights under the Loan Agreement, Side Letter Agreement, and/or Warrant Plaintiff negotiated.

62.    A simple illustration shows the material negative and economic impact that the Central Fundamental Transaction had on Warrant and Bovine Rights.



### Originally Promised Warrant

Franklin County Ohio Clerk of Courts of the Common Pleas- 2015 Oct 23 2:00 PM-15CV009498
Case: 2:15-cv-03022-MHW-TPK Doc #: 2 Filed: 11/26/15 Page: 23 of 31 PAGEID #: 882

**Proposed Warrant Delivered Under The
Central Fundamental Transaction**



63.     Plaintiff made its issues with the Central Fundamental Transaction clear and specifically warned CSA Biotech and Bovine Biotech, among other of the Defendants, that if the Central Fundamental Transaction was completed without restructuring the Warrant to provide and/or maintain all the rights and intended benefit and economics of the Warrant, the Warrant

Franklin County Ohio Clerk of Courts of the Common Pleas- 2015 Oct 23 2:00 PM-15CV009498

Case: 2:15-cv-03022-MHW-TPK Doc #: 2 Filed: 11/26/15 Page: 21 of 31 PAGEID #: 283

value would be significantly damaged and multiple provisions of the Agreements would be violated.

64.     After receiving the original notice regarding the Central Fundamental Transaction, Plaintiff made requests for complete information regarding the status and terms of the Central Fundamental Transaction, which were ignored and unanswered.

65.     Thus, on November 27, 2014, Plaintiff formally sent CSA Biotech, Beus, Moore, and Robinson a formal information request regarding the status and terms of the Central Fundamental Transaction as permitted by the Loan Agreement, in order to determine whether the Central Fundamental Transaction had been restructured and any progress had been made that would allow Plaintiff to approve the Central Fundamental Transaction.

66.     In response to Plaintiff's formal request for information described above, in December 2014, Defendants provided certain additional limited documentation with respect to the Central Fundamental Transaction as described above.

67.     After receiving and reviewing the additional documents, Plaintiff and certain of the Defendants attempted to negotiate terms satisfactory to Plaintiff regarding the Central Fundamental Transaction with respect to the Warrant; however, Defendants refused to offer terms that either complied with the terms of the Warrant, Loan Agreement, and Side Letter Agreement or were otherwise satisfactory to Plaintiffs. Thus, negotiations failed.

68.     In response to the failed negotiations, Defendants stated that they would "restructure" the Central Fundamental Transaction such that it was not a "Fundamental Transaction" and would not violate the Warrant or Agreements.

69.     Plaintiff expressed skepticism regarding the possibility of restructuring the Central Fundamental Transaction in a way that would not violate multiple provisions of the Agreements; however, Plaintiff obviously was not opposed to any transaction between

Defendants and Central that was either (i) a "Fundamental Transaction" that Plaintiff approved and that complied with the terms of the terms of the Warrant, Loan Agreement, or Side Letter Agreement, or (ii) not a "Fundamental Transaction" that did not devalue the Warrant or violate the other terms of the Bovine Warrant, Loan Agreement, or Side Letter Agreement, and that otherwise complied with all other provisions and protections in the Agreements, including regarding ownership of the Bovine Rights and other transfers or merger and acquisition transactions.

70. Shortly after Defendants communicated that they would "restructure" the Central Fundamental Transaction, Defendants resumed their refusal to provide Plaintiff any information regarding the potential or anticipated transaction with Central.

71. In addition, Plaintiff has now confirmed that Defendants closed and completed a transaction with Central Garden & Pet Company that materially and substantially violates the Warrant, Loan Agreement, or Side Letter Agreement, in substantially the form as the originally proposed Central Fundamental Transaction.

**Plaintiff Discovers the Violation of the Release Agreement and Other Agreements Despite Defendants Express Representations, Warranties, Promises, Covenants Otherwise**

72. Following Defendants promise and representations that they would restructure the Central Fundamental Transaction, Plaintiff made additional attempts to check with Defendants to make sure that no transaction was completed that violated the terms of the Warrant, Loan Agreement, and/or Side Letter Agreement.

73. Despite Plaintiff's efforts, Defendants continued to refuse to provide Plaintiff any additional documentation or information regarding any transaction with Central.

74.     At the same time that Plaintiff was requesting documentation regarding any transaction with Central, Defendants notified Plaintiff of its intention to pay off the Loan made pursuant to the Loan Agreement in the then outstanding amount of approximately $10.2 million.

75.     In connection therewith, Plaintiff and Defendants entered into a "Release Agreement." The Release Agreement is attached hereto as <u>Exhibit D</u> and incorporated by reference.

76.     Further, as a condition of the Release Agreement and material inducement to enter into the Release Agreement, and due to Defendants failure to previously and timely provide information regarding any actual or anticipated transaction with Central, Plaintiff and Defendants agreed under the Release Agreement to provide Plaintiff all final agreements, articles of organization/incorporation, operating agreements, and/or other operative documents related to the transaction with Central actually completed (the "Completed Central Transaction") and that is material to the economic or legal rights of the Warrant, Bovine Rights, or Bovine Biotech ("Central Transaction Documents").

77.     Additionally, as a condition of Plaintiff waiting until after the closing of the payments related to the Release Agreement to inspect and review the Central Transaction Documents, Plaintiff specifically required that CSA Biotech represent and warrant that: (i) the Warrant would continue and remain in full force and effect following the Release Agreement; (ii) the Central Transaction Documents, and Completed Central Transaction or the consummation thereof did not breach any material term of the Warrant delivered in connection with the Side Letter Agreement and Loan Agreement; and (iii) the Central Transaction Documents, and any Completed Central Transaction did not materially or negatively impact Plaintiff's interests in the Warrant.

78.    Based on the above material representation and warranties, Plaintiff agreed to short delay in receiving the Central Transaction Documents following closing of the payments under the Release Agreement.

79.    In March 2015, approximately 30 days following the closing and payment under the Release Agreement, Plaintiff was provided with some of the Central Transaction Documents.

80.    Although Plaintiff believes that Defendants still have not provided Plaintiff all the Central Transaction Documents and associated documentation to which it is entitled, the Central Transaction Documents that were provided evidence multiple material and substantial violations of the Warrant, and representations, warranties, covenants and rights provided by some or all of the Defendants under the Release Agreement, Loan Agreement, and Side Letter Agreement. In fact, the Central Transaction Documents were substantially similar to the Central Fundamental Transaction documents provided in December 2014 that Plaintiff rejected.

81.    Namely, the Central Transaction Documents evidence that the Completed Central Transaction, among other things, was a "Fundamental Transaction" involving Central, CSA Biotech and Bovine Biotech on the same or similar terms as the Central Fundamental Transaction, and that the Completed Central Transaction was not restructured as previously represented in December 2014.

82.    In fact, just as was the case with the original proposed Central Fundamental Transaction, the Completed Central Transaction appeared to be a circumvention scheme with respect to Defendants obligations to Plaintiff -- i.e. the Completed Central Transaction put Bovine Biotech and the Warrant in a significantly different holding company position than was promised to Plaintiff in the Agreements

83.    In fact, just as was the case with the Central Fundamental Transaction, the Completed Central Transaction violated multiple key covenants, provisions, representations and

warranties of the Agreements, including with respect to ownership and transfer of the Bovine rights, and other transfers and merger and acquisition transactions.

84.     Due to the clear violations of the Agreements, on April 27, 2015, Plaintiff sent CSA Biotech, Bovine Biotech, N8 Pharma, Ceragyn, Moore, Robinson, Beas a letter regarding the numerous violations of the Agreements. The April 27, 2015 Letter is attached hereto as <u>Exhibit E</u> and incorporated by reference.

85.     The Completed Central Transaction significantly damaged the value of the Warrant for the reasons noted above and in the latter, among others.

86.     Terms of the Warrant, Loan Agreement, and/or Side Letter Agreement and Release Agreement were violated because Plaintiff never approved such transaction and Defendants did not provide Plaintiffs with documentation or notice regarding the transaction, or the right to approve such transaction.

87.     The Central Transaction Documents also (i) evidenced multiple violations of key representations and warranties regarding the Bovine Rights and Bovine Biotech, (ii) involved the transfer of the Bovine Rights from Bovine Biotech to the Central JV; (iii) entering into a company sale or material transaction without Plaintiff's approval and ensuring the Warrant were not negatively impacted; (iv) issuing new superior equity classes with respect to the Bovine Rights and/or Warrants; and (v) attempt to circumvent, avoid and devalue the Warrant.

88.     Due to Defendants false representations and improper actions which violate the parties Agreements and representations, warranties, and covenants therein, Plaintiff is pursuing this action:

      a.     To obtain damages from Defendants for the amount of the full value of the Warrant or the extent to which Defendants actions have devalued the Warrant, plus interest, fees and costs; or

      b.     In equity to: (i) restructure, issue, or attach a new or amended warrants that will apply to all transactions affecting the value of Plaintiff's Warrant with equivalent rights, protections and economics, (ii) allow Plaintiff the right to attach and/or receive a distribution amount from the Completed Central Transaction and entity directly holding the right to commercialize the Bovine Rights, and (iii) require Defendants to produce all documents and materials related to the Bovine Rights and Warrant in the Completed Central Transaction as required by the Release Agreement and Loan Agreement.

## COUNT ONE: BREACH OF CONTRACT

89.    Plaintiff repeats and re-alleges the foregoing Paragraphs as if fully restated hereunder.

90.    Plaintiff and Defendants entered into the Agreements.

91.    The terms of all the Agreements, including the Release Agreement, were clear and definite, made by mutual assent and supported by adequate consideration.

92.    Plaintiffs performed all of their obligations under the the Agreements, including the Release Agreement, and have not materially breached any of the terms of any of the parties Agreements.

93.    When entering into the Release Agreement, the Parties agreed, among other things, that: (i) Defendants would provide Plaintiff with all operative documents arising from a transaction between Defendant, or any affiliate thereof, and Central; (ii) Defendants represented and warranted that the Central Transaction did not breach any material terms of the Warrant or the respective holders' interest therein; (iii) the Warrant and associated documents would continue in full force and effect, and (iv) nothing in the Release Agreement released, was intended or should be interpreted to release, any representations, warranties, covenants, terms or provisions with respect to the Warrant.

0C739 - P80
Franklin County Ohio Clerk of Courts of the Common Pleas- 2015 Oct 28 2:00 PM-15CV009498
Case: 2:15-cv-03022 MHW-TPK Doc #: 2 Filed: 11/20/15 Page: 27 of 31 PAGEID #: 989

94. Despite the above terms, provisions, representations and warranties in the Release Agreement, the Completed Central Transaction materially breaches and violates the Agreements, including the representations, warranties, and terms in the Loan Agreement, Side Letter Agreement, Warrant, and Release Agreement.

95. Making matters worse, despite the fact that it knew it was false, CSA Biotech expressly represented and warranted in the Release Agreement that the Completed Central Transaction or the consummation thereof did not breach any material term of the Warrants, or negatively impact Plaintiff's interests therein

96. As a direct and proximate result of Defendants' unlawful conduct, breach of the (i) Agreements (including the Release Agreement and representations and warranties therein) and (ii) material false and misleading statements, Plaintiffs have suffered and continue to suffer significant economic losses related to the devaluation of the Warrant. As such, Plaintiff seeks an Order consistent with the monetary or equitable relief request in Paragraph 88(a) and (b) and/or:

a. (i) requiring Defendants to pay the monetary damages for the full value of the Warrants or the extent of the Warrants devalue, plus interest, fees and costs, (ii) in the alternative, the immediate ability to exercise the put right under the Warrant against all Defendants, or (iii) in the alternative, to attach a Warrant that will apply in full to the Central JV or any of Defendants interests in the Central JV equivalent rights, protections and economics of the Warrant

b. Allowing Plaintiffs the right to attach and/or receive a to be determined proceeds or distribution amount from the Central Transaction in accordance with its equivalent rights, protections and economics of the Warrant

c. Requiring Defendants to produce all documents and materials required by the Release Agreement and Loan Agreement.

## COUNT TWO: FRAUD/MISREPRESENTATION

97.     Plaintiff repeats and re-alleges the foregoing Paragraphs as if fully restated hereunder.

98.     Defendants knowingly made false representations to Plaintiff regarding, and or failed to disclose, material facts related to the Completed Central Transaction with respect to the Warrants.

99.     Particularly, in December 2014 and early 2015, Defendants falsely represented to Plaintiff that they would "restructure" the Central Fundamental Transaction such that it was not a Fundamental Transaction under the Warrants.

100.     In February 2015, Defendants, including Mike Moore individually and in his capacity as CSAB, represented and warranted that the Completed Central Transaction did not violate the terms of the Warrant, Loan Agreement, Side Letter Agreement and did not affect the Warrant.

101.     The above representations and warranties are false.

102.     Knowing that the Completed Central Transaction violated the terms of the Warrant, Loan Agreement, Side Letter Agreement and effect the Warrant all Defendants remained silent and fraudulently omitted telling Plaintiff that the Completed Central Transaction violated the terms of the Warrant, Loan Agreement, Side Letter Agreement and effect the Warrant

103.     Defendants intended for Plaintiffs to rely, and Plaintiff did rely to its determent on Defendants materially false representations and omissions in connection with the Central Fundamental Transaction and Completed Central Transaction in order to induce Plaintiff to enter into the Release Agreement.

104.    Defendants willfully, maliciously, negligently and knowingly withheld information and made the above false representations to Plaintiff regarding the Completed Central Transaction and its impact and/or effect on the Warrants in December 2014 and early 2015 in order to in order to induce Plaintiff to enter into the Release Agreement and agree to delay receiving the documentation it was entitled under the Agreements with respect to the Completed Central Transaction.

105.    The false representations Defendants made to Plaintiff detailed above and in this Complaint were all material to  Plaintiff, and Plaintiff would not have entered into the Release Agreement had it known the statements Defendants made were false.

106.    Plaintiff would also not had agreed to the Loan Agreement, Side Letter Agreement and delivery of the Warrants had Plaintiff known Defendants intended to beach or would in fact breach the express representations, warranties and representations therein.

107.    Plaintiffs detrimentally relied on Defendants critical and materially false representations, warranties, statements and omissions in entering into the Release Agreement and other Agreements, and as a direct and proximate result of Defendant's fraud and material misrepresentations and omissions, Plaintiff seeks compensatory damages in an amount to be determined at trial, and a declaration that the Release Agreement is ineffective, null and void with the reinstatement of all terms, conditions and obligations of the Loan Agreement prior to the Release Agreement.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff respectfully requests the Court enter Judgment in its favor and against Defendants on all Counts of the Complaint as follows:

(i)      Compensatory damages in an amount far exceeding $25,000.00;

    (ii)     A yet to be determined distribution amount from the Completed Central Transaction;

    (iii)    An equivalent Warrant in the Central JV or the entity(ies) holding the Bovine Rights and other rights Bovine Biotech held at the time of the execution of the Loan Agreement, Side Letter Agreement, and Warrant;

    (iv)    A declaration that the Warrant shall extend and apply in full, to the Central JV or the entity(ies) holding the Bovine Rights and other rights Bovine Biotech held at the time of the execution of the Loan Agreement, Side Letter Agreement, and Warrant;

    (v)     Reinstatement of all liens pursuant to the Securities Purchase Agreement to secure all obligations, including above the full value of the Warrants;

    (vi)    Production of all materials related to the Warrant and Bovine Rights, and the Completed Central Transaction as required by the Release Agreement;

    (vii)   Pre-judgment interest;

    (viii)  Attorney's fees and costs Plaintiff incurs to prosecute this action; and

    (ix)    Such additional relief as the Court deems just and equitable.

Respectfully submitted,

Adam P. Richards
Charles H. Cooper, Jr.     (0037295)
chipc@cooperelliott.com
Rex H. Elliott     (0054054)
rexe@cooperelliott.com
Adam P. Richards     (0085335)
adamr@cooperelliott.com
Cooper & Elliott, LLC
2175 Riverside Drive
Columbus, Ohio 43221
(614) 481-6000
(614) 481-6001 (Facsimile)

Attorneys for Plaintiff
Empire Advisors, LLC

Franklin County Ohio Clerk of Courts of the Common Pleas- 2015 Oct 23 2:00 PM-15CV009498

Case: 2:15-cv-03022-MHW-TPK Doc #: 2 Filed: 11/20/15 Page: 31 of 31 PAGEID #: 93

## JURY DEMAND

Pursuant to Rule 38(B) of the Ohio Rules of Civil Procedure, Plaintiff hereby demands a trial by Jury.

/s/ Adam P. Richards