**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Empire Advisors, LLC,** | : | |
| | : | **Case No. 2:15-cv-3022** |
| **Plaintiff,** | : | |
| | : | **Judge Watson** |
| **v.** | : | |
| | : | **Magistrate Judge Kemp** |
| **CSA BioTechnologies, LLC, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

_____

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY,**
**MOTION FOR LEAVE TO AMEND**
_____

Charles H. Cooper, Jr.      (0037295)
chipc@cooperelliott.com
Rex H. Elliott              (0054054)
rexe@cooperelliott.com
Adam P. Richards            (0085335)
adamr@cooperelliott.com
Cooper & Elliott, LLC
2175 Riverside Drive
Columbus, Ohio 43221
(614) 481-6000
(614) 481-6001 (Facsimile)

Attorneys for Plaintiff
Empire Advisors, LLC

## COMBINED TABLE OF CONTENTS AND SUMMARY
## PURSUANT TO S. D. OHIO CIV. R. 7.2(a)(3)

**Page**

**I.** **INTRODUCTION** …………………………………………...………………………  1

**II.** **PROCEDURAL HISTORY** ……………………………………………...... ..  3

**III.** **STATEMENT OF FACTS** ………………………………………...…………… ..  4

**IV.** **LAW & ARGUMENT**……………………………………………...……………… ..  10

    **A.** **Standards of Review** ……………………………………..……………  10

There are important distinctions between the standards of review applied to each of the 12(b) defenses raised by Defendants. *Tarazi v. Oshry*, 2010 WL 5013819 (S.D. Ohio Dec. 1, 2010) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426 (6th Cir.2008)); *Rayle v. Wood Cty. Hosp.*, 2013 WL 1654898 (N.D. Ohio Apr. 16, 2013); *Soddu v. Procter & Gamble Co.*, 2009 WL 7154444 (S.D. Ohio Nov. 10, 2009).

    **B.** **Defendants' Request For Dismissal Under Fed. R. Civ. P. 12(b)(3) Fails On The Merits** …..………………………………………………….…..  11

        *1. Defendants Have Not Raised Any Argument Permitting Dismissal Under Fed. R. Civ. P. 12(b)(3)*……………………………………....  11

Defendants' argument that this matter should be dismissed based on a forum selection clause is improper under Fed. R. Civ. P. 12(b)(3) and contrary to binding precedent in the Sixth Circuit. Rule 12(b)(3) is not the proper procedural mechanism to challenge venue or change venue on the basis of a forum selection clause. *See Egrsco, LLC v. Evans Garment Restoration, LLC*, 2009 WL 3259423 (S.D. Ohio Oct. 8, 2009); *Kerobo v. Sw. Clean Fuels, Corp.,* 285 F.3d 531 (6th Cir.2002); *Composite Techs., L.L.C. v. Inoplast Composites SA DE CV*, 925 F. Supp. 2d 868 (S.D. Ohio 2013).

    **2. *Venue In This Court Is Proper Under 28 USC § 1391(b)(2) And Because Defendants' Voluntarily Chose To Remove Plaintiff's Complaint From State Court To This Federal Court*** …………..……….    14

The only proper challenge to venue Defendants can make pursuant to Fed. R. Civ. P. 12(b)(3) is under 28 U.S.C. § 1391. Defendants do not argue venue is improper under 28 U.S.C. § 1391; thus, their motion to dismiss under Fed. R. Civ. P. 12(b)(3) must be denied. Even if Defendants did properly challenge venue under 28 U.S.C. § 1391 and Fed. R. Civ. P. 12(b)(3), and they do not, Plaintiff has clearly presented facts sufficient to establish proper venue in this Court. *See* 28 U.S.C. § 1391; *Egrsco, LLC v. Evans Garment Restoration, LLC*, 2009 WL 3259423 (S.D. Ohio Oct. 8, 2009); *Kerobo v. Sw. Clean Fuels, Corp.,* 285 F.3d 531 (6th Cir.2002).

**C.**    <u>**This Court Has Subject Matter Jurisdiction Over This Dispute**</u>………..    15

    **1. *Plaintiff Has Standing To Bring The Claims In This Action, As Plaintiff Is Only The Party That Legally Holds The Warrants And The Rights Related To The Warrants*** ...…………………    15

Considering Plaintiff's Complaint, the exhibits to Plaintiff's Complaint, and the Affidavit of David Richards attached to this memorandum in opposition, Plaintiff clearly has standing to pursue the claims alleged in this action. The Warrant at issue has always been and continues to be held by and Plaintiff. In fact, Plaintiff is the only party that has standing to bring the claims in its Complaint, and Defendants' contention that Plaintiff is not the owner or holder of the Warrant is contrary to allegations in Plaintiff's Complaint and the terms of the parties executed agreements. Because Plaintiff clearly has a personal stake (both financial and legal) in the outcome of this dispute, Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1) should be denied. Declaration of David J. Richards; Pl. Compl. at ¶¶ 29-34; Exhibit B to Pl. Compl., at pp. 1-2, ECF 2-6.

    **2. *Defendants Argument That Plaintiff Is Merely An Agent Of Other Third Parties Holding The Rights To The Warrants Is Incorrect And Misconstrues The Terms Of The Loan Agreement*** …….    18

The Warrant was consideration provided to <u>*Plaintiff*</u> for its services for managing, providing services and arranging the transaction the resulted in the execution of the Loan Agreement. In fact, the agreement executed by all Defendants delivering the Warrant expressly states that the Warrant is being paid, granted, and delivered to Plaintiff for services it provided. Accordingly, Defendants' sole argument that Plaintiff "clearly seeks to assert the

rights of the Lenders" is incorrect.  Richards Declaration; Exhibit A to Pl. Compl. at p. 24-25, Section 6, ECF No. 2-1; Exhibit B to Pl. Compl. at p. 1-2, ECF No. 2-6.

**D.**      **Plaintiff has Properly Plead Its Claims For Breach Of Contract** ………..     20

Plaintiff has properly and sufficiently plead a claim for breach of contract under Fed. R. Civ. P. 8.  Plaintiff's Complaint alleges (1) the existence of a contract; (2) performance by Plaintiff; (3) breach by the Defendants; and (4) damage or loss to the Plaintiff as a result of the breach. Pl. Complaint, ECF No. 2; *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009); *Prey v. Kruse*, 2009 WL 425031, at *7 (S.D. Ohio Feb. 19, 2009) (*citing* Fed. R. Civ. P. 8(a)(2)); *see also*, *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 541 F. Supp. 2d 986, 1015-16 (S.D. Ohio 2007).

**E.**      **Plaintiff has Properly Plead Its Claims For Fraudulent and Negligent Misrepresentation** ………………………………………….     24

Plaintiff has sufficiently plead its claims for fraudulent and negligent misrepresentation.  *In re Nat'l Century Financial Enters., Inc. Investor Litigation* (S.D. Ohio 2008), 580 F.Supp.2d 630, 653 (citing *Bass v. Janney Montgomery Scott, Inc.* (6th Cir.2000); *Lifelink Pharmaceuticals, Inc. v. NDA Consulting, Inc.*, N.D.Ohio No. 5:07-CV-785, 2007 WL 2292461, *2 (Aug. 7, 2007), citing *Sanderson v. HCAThe Healthcare Co.,* 447 F.3d 873, 877 (6th Cir.2006).

**F.**      **Alternatively, In The Unlikely Event The Court Finds Any Deficiencies With Plaintiff's Complaint, Plaintiff Seeks Leave To Amend** …………     28

Leave to amend should be freely given. There is an absence of any apparent or declared reason to deny Plaintiff's request to amend -- such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to Defendants by virtue of allowance of the amendment, futility of the amendment.  Thus, to the extent necessary, the Court should allow Plaintiff leave to amend to cure any flaws with respect to the way in which the claims in Plaintiff's Complaint are plead. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**V.**      **CONCLUSION** ……………………………………………………………     30

## I.     <u>INTRODUCTION</u>

Defendants have moved on various grounds to dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b).[1]  Defendants' contentions regarding why dismissal is appropriate include arguments that: (i) Plaintiff lacks standing because it is not the proper person to bring this action; (ii) venue is improper in this Court under Fed. R. Civ. P. 12(b)(3) because of a mandatory forum selection provision in the parties "Loan Agreement"; (iii) Plaintiff's claim for  breach of contract fails to comply with Fed. R. Civ. P. 8(a); and (iv) Plaintiff failed to plead its fraud/misrepresentation claims with the required specificity under Fed. R. Civ. P. 9(b).   All these arguments fail.  And, as explained below, Defendants' motion presents the quintessential example as to why the Sixth Circuit has warned against counsel using unnecessary hyperbole when attacking an opposing party's claims or defenses – especially when the opposing party is correct.  *Bennett v. State Farm Mut. Auto. Ins. Co.*, 731 F.3d 584, 584-85 (6th Cir. 2013).

*<u>Improper Venue</u>* -- First, Defendants' claim this Court should dismiss Plaintiff's "sketchy and superficial complaint" (which, ironically, presents 29 pages of detailed allegations) under Fed. R. Civ. P. 12(b)(3) because Plaintiffs claims are subject to a contractual provision that "mandates jurisdiction and venue in…St. Louis....".  (*See* Defs' Mot to Dismiss at pp. 2-3, ECF No. 5).  This argument is legally improper under Fed. R. 12(b)(3) because Defendants voluntarily chose to remove this case to federal court in Ohio on the basis of diversity jurisdiction and venue is otherwise proper in this Court under 28 USC § 1391(b).

---

[1]      During the parties Rule 26 (f) conferences, Defendants' counsel indicated that Defendants intend to file additional motions challenging personal jurisdiction and venue. Of course, Plaintiff contends all such motion will fail on the merits.  Irrespective of the factual and legal sufficiency of any such additional arguments, however, Defendants' failure to raise all its purported arguments regarding improper venue and personal jurisdiction in its original motion to dismiss under Fed. R. Civ. P. 12 results in a waiver of the unraised arguments.  Fed. R. Civ. P. 12(h)(1)(A).

Moreover, even, if Defendants' venue argument was properly presented, and it is not, Defendants' argument wholly ignores the fact that both counts of Plaintiff's Complaint substantially arise from (i) events occurring in this Judicial District and (ii) statements, acts and omissions Defendants made to Plaintiff in connection with a "Release Agreement," which mandates that all claims be brought in "Columbus, Ohio."  (*See* Pl. Compl. at pp. 7-8, ¶16(ix) - 17, ECF No. 2).  Indeed the Release Agreement, which is the most recently executed agreement between the parties and the agreement upon which Plaintiff's claims are based, states:

> 11.   Governing Law.  This Agreement and any dispute arising therefrom shall be governed by the laws of the state of Ohio … and venue from any such matters shall be Columbus, Ohio.

(Exhibit D to Pl. Compl. at Section 11, ECF No. 2-8).  Accordingly, Defendants claim on page 3 of its motion stating that the "Loan Amendment Agreement" is the "only" agreement that "contains a consent to jurisdiction *and* mandatory venue provision" is, at best, imprecise and misleading.  (*See* Defs' Mot. to Dismiss at p. 3).

*Lack of Article III Standing* -- Next, Defendants argue that Plaintiff is "attempting to hijack the litigation process … [and] … bring claims in its own name without having Article III standing."  This argument also misses the mark and is contrary to the express terms of the parties' agreements.  While Defendants are right that a portion of Plaintiff's damages in the case relate to Defendants various acts and omissions that devalued a "warrant"[2] (the "Warrant").  Contrary to Defendants' contention, the Warrant has always been and continues to be held by and Plaintiff -- no one else.  (Pl. Compl. at ¶¶ 29-34).  Indeed, the agreements between the parties explicitly say so.  In fact, the "Side Letter Agreement," Exhibit B to Plaintiff's Complaint, states that *Plaintiff* is

---

[2]   A "warrant" is a type of investment security that gives the holder the right to purchase securities (usually equity) from the issuer at a specific price within a certain time frame. A warrant is similar to a call option in that it is the option to purchase equity in a company at certain set price for a period of time regardless of the increase and decrease in the company's value. The main difference between warrants and call options is that warrants are issued and guaranteed by the company, whereas options are exchange instruments and are not issued by the company.  Also, the lifetime of a warrant is often measured in years, while the lifetime of a typical option is measured in months.

2

the holder and owner of the warrant, and that _Defendants_, through Defendant CSA Biotechnologies, LLC, agreed to "pay, grant and/or deliver" the Warrant _to_ _Plaintiff_.  (Exhibit B to Pl. Compl., at pp. 1-2, ECF 2-6).  In other words, Plaintiff is the only party that has standing to bring the claims in its Complaint, and Defendants' contention that Plaintiff is not the owner or holder of the Warrant is contrary to allegations in Plaintiff's Complaint and the terms of the parties executed agreements.  (_Id._; _see also_, Pl. Compl. at ¶¶ 29-33).

_Failure to State a Claim_ -- Finally, Defendants argue that Plaintiff has failed to state a claim for breach of contract, fraud, misrepresentation, and negligent misrepresentation under Rule 12(b)(6), and that Plaintiff Complaint is nothing more than an example of  "groundless litigation" aimed solely at "bullying" one of the Defendants.  Of course, this inflammatory claim is untrue.   Defendants' embellishment aside, no deficiencies in Plaintiff's Complaint exist, as Plaintiff has sufficiently alleged the existence of a contract, i.e. the Release Agreement, and breach thereof by Defendants.  Moreover, Plaintiff has specified in its Complaint all the facts and elements necessary to state a claim for fraud, misrepresentation, and negligent misrepresentation against Defendants.

Accordingly, Defendants' motion to dismiss should be denied in its entirety.  Alternatively, and only as required by the Court, Plaintiff moves pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure and seeks leave to amend and correct any deficiencies with its Complaint.

## II.  PROCEDURAL HISTORY

On October 23, 2015, Plaintiff filed a complaint against Defendants in the Common Pleas Court of Franklin County, Ohio.  Defendants removed Plaintiff's state court complaint to this Court on November 20, 2015 on the basis of diversity jurisdiction. Thereafter, Plaintiff notified

Defendant of certain deficiencies in their removal papers, which included requesting that Defendants file a motion for remand due to a lack of complete diversity.[3]

Defendants responded to Plaintiff's communication by amending their notice of removal and substituting the non-diverse Member with a new and different diverse Member.[4] (*Compare*, Notice of Removal at p. 4, ¶14, ECF No. 1 (identifying "Bailey Farms Investments, LP" as a member of "Defendant CSA Biotechnologies, LLC" and a citizen of "Florida"), *with,* Am. Notice of Removal at p. 4-5, ¶ 14, ECF No. 7, (substituting "Bailey Farms Investments, LP," a Florida citizen, with "Bailey Family Investments, LP," an Oklahoma citizen, as a Member of "Defendant CSA Biotechnologies, LLC" from)).   On November 30 2015, Defendants filed the presently pending motion to dismiss in this Court.

## III.   STATEMENT OF FACTS

### A.   Background

Plaintiff, Empire Advisors, LLC, is an Ohio limited liability company.  (Pl. Compl. at p. 4, ¶1, ECF No. 2).  Plaintiff is a management entity for midmarket private equity and venture funds that opportunistically invest in a broad range of business sectors in debt, equity and mixed transactions.  (*Id*.).  The present dispute arises out of a larger transaction between a company

---

[3]     Among other deficiencies, Plaintiff's counsel notified Defendants' counsel that Plaintiff's Managing Member was a citizen of Florida at the time the Complaint was filed, and because Defendants' removal papers indicated that a Member of one of the Defendants was also a citizen of Florida, complete diversity did not exist.

[4]     Plaintiff has no issues with proceeding in this Court; however, because a lack of diversity would remove subject matter jurisdiction from this Court, Plaintiff believes limited discovery on the citizenship of each of Defendants and their members is a necessary.  Plaintiff is certainly not suggesting anything nefarious by Defendants at this juncture; however, the timing and sequence of events regarding Defendants removal papers is suspicious enough to warrant some minimal additional discovery to ensure this Court's authority is not questioned down the road.  Moreover, one of the named Defendants and a signatory of many agreements relevant to this dispute has a prior track record of attempting to improperly influence federal court proceedings against him, which is additional reason why Plaintiff believes further review of the Defendants' citizenship is necessary. *See* http://www.deseretnews.com/article/414420/UTAHN-BAGS-PRISON-TERM-FOR-ELK-POACHING-BRIBERY.html?pg=all. Without prejudice to or waiver by Plaintiff to seek discovery on this issue, under the amended removal papers filed by Defendants, it does appear complete diversity does exist.

4

known as N8 Medical, Inc.[5] ("N8 Medical") (a company in which Plaintiff is invested) and certain of the Defendants.  (*Id*. at ¶¶ 18-23).

In August 3, 2012, pursuant to a Stock Purchase Agreement dated June 4, 2012, as amended ("SPA"), Defendant, CSA Biotechnologies, LLC purchased all the shares of a former affiliate of N8 Medical known as N8 Pharmaceuticals, LLC.  (*Id.* at ¶ 21).  The SPA, among many other things, obligated CSA Biotechnologies, LLC and certain other of the Defendants to pay approximately $15 million for the acquisition of the shares of N8 Pharmaceuticals, LLC.  (*Id.* at ¶ 22).

The money owed as a result of the share acquisition was to be paid in multiple installments, the last of which was originally scheduled to be due on June 30, 2013.  In early 2013, however, Defendant CSA Biotechnologies, LLC approached *Plaintiff* about its and certain of the other Defendants inability to make the upcoming payments owed under the SPA.  (*Id.* at ¶ 23).

**B.    The Agreements Preceding The Release Agreement**

After negotiations, Plaintiff agreed (i) to negotiate and did negotiate an extension of the payment due under the SPA, and (ii) to manage, locate and place approximately $10 million in financing certain of the Defendants needed to satisfy its obligations under the SPA.  (*Id.* at ¶¶ 24-26).  The Defendants involved in this litigation are all parties to the agreement that resulted in a loan being extended to cover the outstanding payments due under the SPA (the "Loan Agreement").  (*See Id.* at ¶ 28; Exhibit A to Pl. Compl. at p. 1, ECF No. 2-1).  Additionally, and simultaneously in connection with Plaintiff's successful arrangement of the financing and

---

[5]      N8 Medical is a biopharmaceutical/medical device company focused on the research of compound known as "ceragenins," and holds an exclusive license from BYU for the commercial development certain uses of ceragenin technologies. (*Id*. at ¶¶ 18-19; *see also*, http://www.n8medical.com/).

5

payment extensions under the Loan Agreement, Plaintiff and the Defendants entered into the "Side Letter Agreement," which delivered the Warrant to Plaintiff. (Pl. Compl. at ¶ 29; *see also*, Exhibit B to Pl. Compl., ECF 2-6).

Under the Side Letter Agreement, Defendants agreed that Defendant CSA Biotechnologies, LLC would "grant and/or deliver <u>to</u>" <u>Plaintiff</u>:

> Five-year warrants on the terms, and with the rights and protections, set forth below and attached hereto, which per the Amended Loan Agreement shall approximate […] and (ii) an equity interest June 15, 2013 that is equivalent to a 3% voting equity interest (consisting of the most senior or desirable equity interests), on a fully-diluted basis, in Bovine at a strike price and on the terms and in the form as forth in the form warrant attached hereto as Exhibit A and incorporated herein by this reference (the "**Bovine Warrant**," and together with the Urology Warrant, the "**Warrants**").

(Pl. Compl. at ¶ 32; *see also*, Exhibit B to Pl. Compl. at pp. 1-2).[6]  Later, as required by the Loan Agreement and Side Letter Agreement, the Warrant was delivered to Plaintiff.  (Pl. Compl. at ¶ 33).  The terms and conditions of the Warrant are reflected in Exhibit C to Plaintiff's Complaint. (*Id*.; *see also*, *id* at ¶ 62).

Further, in connection with the above transaction, Defendants made various express material representations, promises, and warranties to Plaintiff.  (*Id*. at ¶¶ 34-49).   Although the Warrant was delivered pursuant to the Side Letter Agreement, each of the Loan Agreement, Side Letter Agreement and Warrant contained material promises, representations, and warranties regarding the Warrant. (S*ee, id*.). All the various material representations, promises, and warranties Defendants made to Plaintiff were material and fundamental and relied upon by Plaintiff.  (*Id*. at ¶ 35).  Plaintiff identifies various material promises, representations, and

---

[6]     In addition to the Warrant, a second warrant not at issue in this litigation was also delivered to Plaintiff under the Side Letter Agreement.

warranties made under the Warrant, Loan Agreement and Side Letter Agreement at Paragraphs 36-49 of its Complaint, upon which Plaintiff relied, including, but not limited to, that Defendant Bovine Biotech, LLC "holds, ***and shall continue to hold***, the rights on a world-wide, exclusive basis, to all rights for the treatment of bovine mastitis" using ceragenins ("Bovine Rights"). (*Id.* at ¶¶ 38, 41). It was extremely critical to Plaintiff that Defendant Bovine Biotech, LLC held and continued to hold all of the Bovine Rights because the Bovine Rights is what gave substantially all the value to the Warrant. (Declaration of David J. Richards at ¶¶ 22-23).

   **C.    The Release Agreement (The Agreement At Issue In This Lawsuit), Defendants Breach Thereof, and Defendants Negligent And Fraudulent Misrepresentations In Connection With The Release Agreement.**

In early 2015, Defendants sought to re-pay all amounts borrowed under the Loan Agreement (the "Loan Payoff"). (*Id.* at ¶¶ 74-75; *see also*, Exhibit D to Pl. Compl., ECF No. 2-8). In connection with the Loan Payoff, Plaintiff and Defendants entered into a "Release Agreement." (*Id.*). The parties' negotiation of the Release Agreement was a complex transaction itself due to a dispute that existed between Plaintiff and Defendants at the time. (Pl. Compl. at ¶¶ 50-75; *E.g.,* Exhibit E to Pl. Compl., ECF No. 2-9).

Namely, in late 2014, Plaintiff discovered that some or all of the Defendants were contemplating entering into a transaction with a public company known as Central Garden & Pet Company that violated the Warrant, Side Letter Agreement, and Loan Agreement. (Pl. Compl. at ¶¶ 50-63). In response to this discovery, Plaintiff notified Defendants that it objected to any transaction with Central Garden & Pet Company. (*Id.* at ¶¶ 63-67).

In response to Plaintiff's objection, Defendants stated that they would "restructure" the contemplated transaction with Central Garden & Pet Company such that it would not violate the Warrant, Loan Agreement, or Side Letter Agreement. (*Id.* at ¶ 68). Plaintiff expressed skepticism regarding the possibility of restructuring the transaction with Central Garden & Pet

Company so that it did not violate multiple provisions of the Warrant, Loan Agreement, or Side Letter Agreement. (*Id*. at ¶ 69).  However, Plaintiff communicated to Defendants that it was not opposed to any transaction between Defendants and Central Garden & Pet Company that, among other things, complied with the terms of the terms of the Warrant, Loan Agreement, and Side Letter Agreement and did not devalue the Warrant.  (*Id*.).

In 2015, when Defendants sought to complete the Loan Payoff, Plaintiff was aware that some or all of the Defendants were still negotiating and/or renegotiating a transaction with Central Garden & Pet Company.  (Richards Decl. at ¶¶ 28-30).  As such, Plaintiff inquired as to the terms and status of the transaction. (*Id*. at ¶ 31).  Defendants' response to Plaintiff's requests, however, was delay and refusal to provide specific documentation regarding the actual or contemplated terms of the transaction with Central Garden & Pet Company.  (*Id*. at ¶ 32; Pl. Compl. at ¶¶ 72-73).  In essence, Defendants response was "trust us," we have restructured the transaction with Central Garden & Pet Company as we promised and it does not violate the terms of the Warrant, Loan Agreement, or Side Letter Agreement, and did not devalue the Warrant. (Richards Decl. at ¶ 33).  Because Defendants refused to present Plaintiff with any documents demonstrating that the actual or contemplated transaction with Central Garden & Pet Company did not violate the Warrant, Loan Agreement, or Side Letter Agreement, Plaintiff required certain specific provisions be included in the Release Agreement.  (Pl. Complaint at ¶¶ 72-78).

The material terms Plaintiff required to be included in the Release Agreement included provisions: (i) mandating venue in Ohio related to any breaches of the Release Agreement or "any dispute arising therefrom;" (ii) demanding Defendants provide all final documents and materials related to any transaction with the Central Garden & Pet Company; and (iii) requiring Defendant CSA Biotechnologies, LLC to expressly reconfirm its promises, warranties, and representations and confirm, promise, represent, and warrant that any transaction actually entered

into with the Central Garden & Pet Company "(a) … **did not breach any material term of the [Warrant] provided to [Plaintiff] in connection with the Loan Agreement or agreement with respect thereto**…, and (b) that the [Warrant] shall continue in full force and effect pursuant to the terms thereof. (*Id*. at ¶¶ 76-77; *see also*, Exhibit D to Pl. Compl., ECF No. 2-8, Section 2.b.iii, Section 11; (Richards Decl. at ¶ 35).

Following the closing and payment under the Release Agreement, Defendants provided Plaintiff *some* of the documents required by the Release Agreement. (Pl. Compl. at ¶ 79). Plaintiff is concerned that Defendants still have not provided all documents required under the Release Agreement in breach of the Release Agreement.  (*Id*. at ¶ 80).  Nevertheless, the documents Defendants have provided evidence multiple material and substantial violations of the Warrant, Loan Agreement, and Side Letter Agreement. (*Id*. at ¶¶ 38, 80-83).  These same material violations of the Warrant, Loan Agreement, and Side Letter Agreement related to the Warrant (including all representations, warranties, covenants, and promises with respect thereto) **constitute an express violation of the Release Agreement**.  (*See* Exhibit D to Pl. Compl., ECF 2-8, Section 2.b.iii).

### D.    Plaintiff's Complaint Asserts Claims Under the Release Agreement.

Plaintiff's Complaint clearly and conspicuously incorporates the terms and provisions of the Release Agreement.  (Pl. Compl. at ¶¶ 75 (incorporating the terms of the Release Agreement)).  The Release Agreement expressly states that  Defendant CSA Biotechnologies, LLC promises, represents, and warrants that the transaction any of Defendants entered into with the Central Garden & Pet Company "…did not breach any material term of the [Warrant] provided to [Plaintiff] in connection with the Loan Agreement or agreement with respect thereto…". (*Id*. at Pl. Complaint at ¶¶ 49, 77, 92, 95; Exhibit D to Pl. Compl., ECF 2-8, Section 2.b.iii).  Plaintiff has reviewed the documents Defendants provided related the Central Garden &

Pet Company transaction, and Plaintiff asserts that such documents evidence a <u>direct violation of</u> <u>Section 2.b.iii of the Release Agreement</u>.  (Pl. Compl. at ¶ 81-87, 93-94). For example, Bovine Biotech, LLC no longer directly holds the Bovine Rights.  (Pl. Compl., at ¶¶ 38, 83).

Shortly after receiving some documents related to the transaction with Central Garden & Pet Company, Plaintiff sent notice to Defendants CSA Biotechnologies, LLC, Bovine Biotech, LLC, N8 Pharmaceuticals, LLC, Ceragyn, LLC, Chad Beus, Lance Robinson and Michael Moore regarding the violations of the Release Agreement.  (*Id.* at ¶ 84; Exhibit E to Pl. Compl., ECF 2-9).  In fact, Exhibit E to Plaintiff's Complaint, which is incorporated by reference, also list several specific ways the Release Agreement was breached as a result of the transaction with Central Garden & Pet Company, and specifically cites sections of the Warrant, Loan Agreement, and Side Letter Agreement violated.  (*Id.*; *see also*, Pl. Compl. at ¶¶ 85-87; Richards Decl. at ¶¶ 37-38).

As a result of Defendants violations of the Release Agreement and material, negligent and fraudulent misrepresentations and omissions related thereto, Plaintiff is seeking damages caused by the actions of Defendants that have devalued the Warrant, the production of all remaining unproduced documents related to the Central Garden & Pet Company transaction and due to Plaintiff under the Release Agreement, and other equitable/contractual relief specified in the Complaint.  (Pl. Compl. at ¶¶ 88, 96, 107).

## IV.    LAW & ARGUMENT

### A.    Standards of Review.

Although Defendants do not plainly state what standards apply to each of its Rule 12(b) arguments, it is clear that their motion to dismiss rests solely on Fed. R. Civ. P. 12(b)(1), 12(b)(3) and 12(b)(6). (See Defs' Mot to Dismiss at p. 1).  As explained below, each of these distinctions is important.

"When a court is presented with a Rule 12(b)(6) motion, it may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss, so long as they are referred to in the Complaint and are central to the claims contained therein." *Tarazi v. Oshry*, 2010 WL 5013819 at *1 (S.D. Ohio Dec. 1, 2010) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir.2008)).  Matters beyond the above may not be considered without converting the motion into one for summary judgment. *Id*.  When considering a Rule 12(b)(6) motion, courts "must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss." *Rayle v. Wood Cty. Hosp.*, 2013 WL 1654898, at *2 (N.D. Ohio Apr. 16, 2013).

Conversely, in considering a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, a court may consider evidence outside the pleadings without converting the motion into one for summary judgment. *Tarazi,* at * 1 (*citing Nichols v. Muskingum Coll.,* 318 F.3d 674, 677 (6th Cir.2003)). Similarly, when considering a motion under Rule 12(b)(3), the court "may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Soddu v. Procter & Gamble Co.*, 2009 WL 7154444, at *4 (S.D. Ohio Nov. 10, 2009).

**B.    Defendants' Request For Dismissal Under Fed. R. Civ. P. 12(b)(3) Fails On The Merits.**

*1.    Defendants Have Not Raised Any Argument Permitting Dismissal Under Fed. R. Civ. P. 12(b)(3).*

Defendants' singular claim as to why the Court should dismiss Plaintiff's Complaint pursuant for improper venue is because a forum selection clause in the parties "Loan Agreement

mandates jurisdiction and venue" in "St. Louis…".[7]  (Defs' Mot. to Dismiss at pp. 3-4).  Even accepting the premise of Defendants' argument as true, which plaintiff disputes because the agreement Plaintiff is currently alleging claims under is the parties Release Agreement, Defendants motion must still be denied.  *See* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1352, (3d ed.), Motions to Dismiss—Improper Venue Forum (stating "forum selection clauses cannot make venue 'wrong' or 'improper' within the meaning … Rule 12(b)(3), which is why Rule 12(b)(3) is no longer an appropriate method for enforcing forum selection clauses.").

The law on this issue in the Sixth Circuit is clear and simple.  A motion to dismiss for improper venue pursuant to 12(b)(3) will only be granted if the case was not filed in a venue prescribed by 28 U.S.C. § 1391.  *Egrsco, LLC v. Evans Garment Restoration, LLC*, No. 2:09-CV-358, 2009 WL 3259423, at *1 (S.D. Ohio Oct. 8, 2009) (citing *Kerobo v. Sw. Clean Fuels, Corp.,* 285 F.3d 531, 536 (6th Cir.2002)).   This is because a motion to dismiss for improper venue pursuant to 12(b)(3) is only a means to challenge venue if it was improper.  *Id.* at *3 (citing *Kerobo,* 285 F.3d at 536).

Both the cases of *Egrsco* and *Kerobo* control this issue.  In *Egrsco,* the Defendant moved to dismiss pursuant to 12(b)(3) and to transfer pursuant to 28 U.S.C. § 1404(a) on the grounds that the plaintiff's action was controlled by  a "forum selection clause." *Egrsco, LLC,* at *1, 3.  In addressing the issue related to whether Fed. R. Civ. P. 12(b)(3) was the proper basis to dismiss a complaint for improper venue due to a forum selection clause, the Court held as follows:

> A motion to dismiss for improper venue pursuant to 12(b)(3) must generally be denied if the case was filed in a venue prescribed by 28 U.S.C. § 1391, as 12(b)(3) motions are only a means to challenge venue if it was improper. *See Kerobo,* 285

---

[7]     Defendant has not moved under to transfer venue under 28 U.S.C. § 1404 or 28 U.S.C. § 1406; thus, these federal statues will not be addressed herein.

F.3d at 536. This case was filed in this Court on the basis of diversity jurisdiction. In a diversity action, venue is proper in the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ..." 28 U.S.C. § 1391(a). The Plaintiffs have alleged that a substantial part of the events giving rise to their claims occurred in the Southern District of Ohio. Therefore, because this case was filed in a venue prescribed by Section 1391, Defendant's Motion to Dismiss is **DENIED.**

*Id.* at *3.

The Sixth Circuit has also addressed the issue of whether a motion under Rule 12(b)(3) is the proper way to request dismissal of a complaint for improper venue based on a forum selection clause. See *Kerobo v. Sw. Clean Fuels, Corp.,* 285 F.3d at 534-37. The court in *Kerobo* held that it was not. *Id.* In *Kerobo*, the court first concluded that statutory venue was proper in the district court because the defendants properly removed the action from state court to federal court. *Id.* at 534. The *Kerobo* court then held that the forum-selection clause did not render venue improper. *Id.* at 535. Finally, the court concluded that only 28 USC § 1404(a), not a Rule 12(b) motion to dismiss, was the proper method to challenge venue in a case removed from state court to federal court. *Id.* at 538–39.

Similar to the above cases, here, Defendants removed Plaintiff's Complaint from the state courts of Ohio to this Court, which was the only proper court for Defendants removal under 28 USC § 1441(a). Moreover, fatal to Defendants argument is the fact that they do not contest venue under 28 USC § 1391, but instead only urge the Court to deem venue improper in an effort to enforce a forum selection clause. Defs' Mot. Dismiss pp. 3-5. The Sixth Circuit has expressly rejected Defendant sole argument and held that a forum selection clause does not render the venue improper. *Kerobo,* 285 F.3d 531, 535 (6th Cir.2002) (contractual designation of forum does not render venue dictated by removal statute improper: "[t]he Supreme Court made it clear in [*Stewart Org., Inc. v.*] Ricoh [*Corp.,* 487 U.S. 22 (1988)] that forum selection clauses do not dictate the forum."); *see e.g*, *Wong v. PartyGaming, Ltd.,* 589 F.3d 821, 830 (6th Cir.2009)

(citations omitted) (stating "the court must only consider the applicable venue statute to determine whether the venue is proper, as '[forum choice] clauses do not deprive the court of proper venue.'"); *Egrsco, LLC*, at *3; *Composite Techs., L.L.C. v. Inoplast Composites SA DE CV*, 925 F. Supp. 2d 868, 872-74 (S.D. Ohio 2013).

> ### 2.  Venue In This Court Is Proper Under 28 USC § 1391(b)(2) And Because Defendants' Voluntarily Chose to Remove Plaintiff's Complaint From State Court To This Federal Court.

Even if Defendants did challenge venue under 28 U.S.C. § 1391, and they do not, Plaintiff has clearly alleged facts in its Complaint sufficient to establish venue in this Court is proper. The provisions of 28 U.S.C. § 1391 make clear that venue is proper if "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" in the Southern District of Ohio. 28 U.S.C. § 1391(b)(2). As alleged in Plaintiff's Complaint, this is clearly the case. (*See* Pl. Comp. at ¶¶ 16-17).

Plaintiff's complaint alleges that Defendants (i) have certain minimum contacts with Ohio, (ii) did business with Plaintiff in Ohio; (iii) obtained a financing from Plaintiff in Ohio; (iv) made various promises, representations, and warranties to Plaintiff in Ohio; (v) breached various promises, representations, and warranties to Plaintiff in Ohio; (vi) offered securities to Plaintiff in Ohio, and (vii) consented to the jurisdiction of the courts of The State of Ohio, including this Court, under the most recent agreement related to matters hereunder, the Release Agreement. (*Id.* at ¶16). Plaintiff also specifically alleges that venue is proper because (i) the express terms of the Release Agreement establish Columbus, Ohio as the appropriate venue to pursue any dispute thereunder (ii) Franklin County, Ohio is the county in which Defendants conducted activity that gave rise to Plaintiff's claim for relief; (iii) **Franklin County, Ohio is a county in which all or part of Plaintiff's claim for relief arose**; and (iv) Franklin County, Ohio is the county where Plaintiff resides. (*Id.* at ¶17).

14

Finally, Plaintiff's negotiation and execution of the operative agreement, the Release Agreement, occurred in Columbus, Ohio. (Richards Decl. at ¶ 26).  And, Defendants made the representations, promises, warranties, and covenants to Plaintiff at issue in this lawsuit while Plaintiff was in Columbus, Ohio. (*Id.*).  Defendants have not offered any evidence, via affidavit or otherwise, disputing the above allegations in Plaintiff's complaint; thus, venue in this Court is proper under 28 U.S.C. § 1391(b)(2).

At this point, Defendants cannot submit any evidence beyond the record disputing the above.  Accordingly, Defendants Motion under Rule 12(b)(3) must be denied.  No evidentiary hearing is necessary on this issue because Defendants have not presented any evidence that could result is a finding of improper venue.  However, in the unlikely event the Court is considering dismissing Plaintiff's Complaint for improper venue, the Court should use its inherent power to transfer this case to the appropriate venue under 28 USC § 1406(a).

**C.     This Court Has Subject Matter Jurisdiction Over This Dispute.**

> **1. Plaintiff Has Standing To Bring The Claims In This Action, As Plaintiff Is The Only Party That Legally Holds The Warrants And The Rights Related To The Warrants.**

Defendants' argument under Fed. R. Civ. P. 12(b)(1) – this court lacks subject matter jurisdiction – is based on the faulty premise that Plaintiff "lacks Article III standing to bring both counts" in the Complaint in Plaintiff's own name.  (Defs' Mot. to Dismiss at p. 1).  Defendants' flawed argument asserts that Plaintiff lacks standing because by suing for the devaluation of the Warrant, Plaintiff is seeking to enforce rights held by third parties.  (Defs' Mot. to Dismiss at p. 6).  In other words, Defendants claim Plaintiff is an "agent" for the real parties holding the rights related to the Warrant.  Putting aside that this argument ignores several other basis for Plaintiff's lawsuit – such as Plaintiff's allegations that Defendants breached the Release Agreement by failing to produce certain documents – Defendants' contention is simply wrong.

15

The Warrant and agreement delivering the Warrant (the Side Letter Agreement) expressly specify that Plaintiff is the party holding the Warrant and the party that has all rights related thereto. (Exhibit B to Pl. Compl at pp. 1-2; (Richards Decl. at ¶¶ 15-19). In addition to the legal rights related to the Warrant, Plaintiff has a financial and beneficial interest in the Warrant as the sole party holding and having the right to exercise the Warrant. (*Id.*). Further, a simple reading of Plaintiffs' Complaint and the exhibits attached thereto and incorporated therein expressly establish Plaintiff has standing to sue for the damages and relief sought in this action.

As stated in Plaintiff's Complaint, in connection with Plaintiff's arrangement of the financing and payment extensions under the Loan Agreement, Plaintiff and *all* the Defendants entered into the "Side Letter Agreement," which delivered the Warrant to Plaintiff. (Pl. Compl. at ¶ 29; *see also*, Exhibit B to Pl. Compl., ECF No. 2-6). Under the Side Letter Agreement, Defendants agreed that Defendant CSA Biotechnologies, LLC would "grant and/or deliver to" Plaintiff, and no one else (Pl. Compl. at ¶ 32; *see also*, Exhibit B to Pl. Compl. at pp. 1-2).

Additionally, Section 2(b) of the Side Letter Agreement expressly states that *Plaintiff* (no other party) is accepting the Warrant:

> (b) Warrant Issuer Ownership of Rights. Agent[8] is accepting the Warrants in Bovine and Urology because such entities are the licensees of rights for ceragenin compounds and technology as represented and described to Agent. If Company its rights to such technology held by the Warrant issuer to any subsidiary, series member, affiliate or other entity directly or indirectly controlled by such company or its affiliates (other than a sublicense agreement with a non-affiliate in the ordinary course of business, as reasonably consented by Lender), the Warrant shall extend and apply in full, with respect to such entity and maintain the intended economic benefit granted hereunder.

(Exhibit B to Pl. Compl. at pp. 3-4). Moreover, the Side Letter Agreement delivering the Warrant is executed by Plaintiff and not any of the third party "Lenders" referenced by Defendants.

---

[8]     The term "Agent" in the Side Letter Agreement refers to the Plaintiff in this matter, Empire Advisors, LLC.

If the above was not enough to establish Plaintiff's standing, and it is, the Warrant itself makes clear that Plaintiff is the only party with the right to exercise the Warrant. (*See* Exhibit C to Pl. Compl., ECF 2-7). Plaintiff and Defendant Bovine Biotech, LLC -- no other parties -- signed the Warrant. (Id. at pp. 16-17). The Warrant also specifies that any notice to the "Holder" of the Warrant must be sent to Plaintiff and its counsel, no one else. (*Id*. at p. 13). If any third party held legal rights related to exercising the Warrant, of course, they would have executed the Side Letter Agreement or Warrant and been entitled to notice.

Accordingly, Plaintiff has standing to sue for the claims in this action. Plaintiff is the legal, rightful, and beneficial owner/holder or the Warrant. (Richards Decl. at ¶¶ 19, 22-23, 27 Pl. Complaint at ¶¶ 29-34). As the legal, rightful and beneficial owner/holder or the Warrant, Plaintiff has a substantial legal and financial interest in the subject matter of this dispute. (*Id*.). If there is any harm to the value of the Warrant, Plaintiff is damaged. (*Id.*; Pl. Complaint at ¶¶ 29-34). If the Bovine Rights that provided substantial value to the Warrant were indeed transferred to a third-party contrary to and in violation of Defendants representations, warranties, and promises in and confirmed under the Release Agreement, Plaintiff is entitled to seek equitable relief in the form of a new warrant and/or sue for damages. (*Id*.; *see also*, Exhibit B to Pl. Compl. at pp. 4).

In other words, the Release Agreement specifies that Defendant CSA Biotechnologies, LLC promised, represented and warranted that the transaction it entered into with the Central Garden and Pet Company did not violate any of the material terms of the Warrant, Loan Agreement, or Side Letter Agreement dealing with the Warrant. Because Plaintiff is the party holding the rights and beneficial interests related to the Warrant, to the extent Defendants' violated its obligations Release Agreement or made material misrepresentations to Plaintiff in connection with the Release Agreement, Plaintiff has standing to sue and recover its damages or seek any other equitable relief to which it is entitled.

17

Finally, one element of Plaintiff's breach of contract claim also relates to Defendants' failure to deliver all documents to Plaintiff required by the Release Agreement. (*See* Pl. Complaint at ¶¶ 80, 88(b)(iii), 93(i), and 96(c)). Defendants do not address this issue, but it is a separate reason why Plaintiff has standing to bring the claims in this action. The Release Agreement specifically obligates <u>all</u> Defendants to produce documents to <u>Plaintiff</u> related to the Central Garden & Pet Company transaction. (Exhibit D to Pl. Compl., Section 2.b.iii). Plaintiff claims Defendant has not produced all required documents; thus, Plaintiff has standing to bring this claim as well.

In sum, Plaintiff clearly has a personal stake (both financial and legal) in the outcome of this dispute. Accordingly, Defendants motion to dismiss under Fed. R. Civ. P. 12(b)(1) should be denied.

### 2. *Defendants' Argument That Plaintiff Is Merely An Agent Of Other Third Parties Holding The Rights To The Warrants Is Incorrect And Misconstrues The Terms Of The Loan Agreement.*

Defendants' sole argument that Plaintiff "clearly seeks to assert the rights of the Lenders" is the result of a flawed reading and fundamental misunderstanding of the Loan Agreement. Although, Defendants do not point to any particular allegation in Plaintiff's Complaint or provision of any of the exhibits attached to Plaintiff's Complaint to base its argument, it seems clear that Defendant is basing its argument on Section 6 of the Loan Agreement. Of course, Section 6 of the Loan Agreement does not state Plaintiff is an agent for the Lenders in connection with the Warrant.

Before addressing Section 6 directly, a brief summary is required. As stated above, when certain of the Defendants could not pay an obligation due under the SPA, Plaintiff was approached to secure funding/financing so that the Defendants owing money under the SPA could satisfy their debt obligations. *See* Section III.A., *supra*, at pp. 5-6. Ultimately, Plaintiff

agreed to assist the Defendants owing money under the SPA with their urgent capital needs. *See* Section III.B., *supra*, at pp. 6. Plaintiff also materially participated as a source for the funding. (Richards Decl. at ¶ 9). As a result, Plaintiff went into the marketplace and raised and secured the necessary funding requested, which was memorialized in the Loan Agreement. *Id*. Of course, all of the money secured was not that of Plaintiff's, and in order to raise the necessary funding, Plaintiff made a secured debt offering to Plaintiff's investors. (Richards Decl. at ¶ 11). Because the loan provided under the Loan Agreement came from multiple sources, in order to simplify matters regarding the loan and sources of funding, pursuant to Section 6 of the Loan Agreement, Plaintiff was appointed as the agent and manager with respect to the loan, notes, and other collateral securing the loan, being provided Defendants. (*Id.* at ¶ 12).

    Consistent with the above, Section 6.1 of the Loan Agreement states:

> 6.1. Appointment of New Administrative Agent and Manager. The new administrative and collateral agent ("**Agent**") with respect to the Loan Documents in the related Notes and Security Documents with full power of attorney to act on behalf of such Lenders with respect to the foregoing and all matters related thereto is and shall be Empire Advisors, LLC. As set forth in the SPA: Agent shall manage and take all actions deemed necessary or appropriate by Agent with respect to the Loan Documents on behalf of Lenders, and may receive all payments on behalf of Lenders for distribution to the respective Lenders. Agent's sole responsibility in connection therewith shall be to act in good faith with respect thereto in accordance with what Agent believes to be the best interest of Lenders, [….].

(Exhibit A to Pl. Compl. at p. 24, Section 6.1, ECF No. 2-1; see also, Pl. Compl. at ¶ 26 (incorporating Exhibit A into complaint)).

    What is noticeably absent from Section 6.1 and Plaintiff's role as an agent and manager related to the loan is any reference to the Warrant. This is because Section 6.2 of the Loan Agreement relates to the Warrants, and states:

> 6.2. Administrative Agent and Manager Fee. The Agent [Plaintiff] shall receive, in exchange for its foregoing services and in connection with the Loan, such consideration as is agreed between Agent and Borrower Affiliates.

(*Id*. at Section 6.2).  In other words, the Warrant was consideration provided to *Plaintiff*

for its services and fee for managing, providing services, and arranging the transaction

the resulted in the execution of the Loan Agreement. (Richards Decl. at ¶ 15).  In fact, the

Side Letter Agreement, which was executed by Plaintiff and all Defendants

simultaneously with the Loan Agreement and delivered the Warrant expressly states that

as consideration for the services Plaintiff performed in connection with the Loan

Agreement, the Warrant was being paid, granted, and delivered to Plaintiff:

> CSAB retained the Advisor [i.e. Plaintiff] to perform certain services and provide certain assistance in connection with the Transactions (the "**Services**") and related transactions
>
> A. <u>CONSIDERATION</u>. In consideration for performing the Services, CSAB has agreed, and hereby agrees, to pay, grant and/or deliver to Advisor the following in connection with the execution hereof and the Amended Loan Agreement:
>
> […]
>
> 2. <u>Warrants</u>. Five-year warrants on the terms, and with the rights and protections, set forth below and attached hereto, which per the Amended Loan Agreement shall approximate […] (ii) an equity interest that is equivalent to a 3% voting equity interest (consisting of the most senior or desirable equity interests), on a fully-diluted basis, in Bovine at a strike price and on the terms and in the form as forth in the form warrant attached hereto as Exhibit A and incorporated herein by this reference (the "**Bovine Warrant**", and together with the Urology Warrant, the "**Warrants**").

(Exhibit B to Pl. Compl. at p. 1-2, ECF No. 2-6). The Defendants signed the agreement

with this provision.

Based on the above, Defendants' claims regarding Plaintiff's standing fail.

> **D.**     **<u>Plaintiff has Properly Plead Its Claims For Breach Of Contract</u>**.

Next, Defendants argue that Plaintiff's claims for breach of contract fail to meet the

pleading requirements of Fed. R. Civ. P. 8(a).  To support their argument, and without citing to

any examples, Defendants make the argument that Plaintiff's Complaint "is a textbook lesson in conclusory pleading."  (Defs' Mot to Dismiss at p. 7).  Apparently, Defendants did not read the 96 paragraphs of detailed allegations in Plaintiff's Complaint related, in part, to Plaintiff's breach of contract claims.

To survive a motion to dismiss for failure to state a claim a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009) (clarifying the plausibility standard articulated in *Twombly* ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" *Iqbal,* 556 U.S. at 678. The factual allegations need only be "enough to raise a right to relief above the speculative level...." to survive a motion to dismiss.  *Twombly,* 550 U.S. at 555. In fact, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable...." *Bell Atl. Corp.,* 550 U.S. at 556.  Moreover, a breach of contract claim need not be plead with "crystalline clarity," as long as it shows the pleader is plausibly "entitled to relief." *Prey v. Kruse*, 2009 WL 425031, at *7 (S.D. Ohio Feb. 19, 2009) (*citing* Fed. R. Civ. P. 8(a)(2)); *see also*, *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 541 F. Supp. 2d 986, 1015-16 (S.D. Ohio 2007).

The allegations in Plaintiff's Complaint regarding its breach of contract claim skyrocket past this standard.  Plaintiff's claims for breach of contract are based on Defendants' violation of the Release Agreement.  (Pl. Compl. at ¶¶ 72-88, 91-94; Section III.C, supra, pp. 8-12).  Namely, the Release Agreement (i) requires all Defendants to produce certain documents to Plaintiff related to a transaction with a third-party, Central Garden & Pet Company, and (ii) contains express warranties and representations by Defendant CSA Biotechnologies, LLC that the transaction Central Garden & Pet Company entered into by some or all of the Defendants and/or

21

their affiliated or related entities did not violate any term of the Defendants' prior agreements (i.e. the Loan Agreement, Side Letter Agreement, and Warrant) with Plaintiff related to the Warrant. (*Id*. at ¶¶ 36-49, 72-88, 91-94). Because Plaintiff believes Defendants have violated the above provisions of the Release Agreement, it filed its Complaint seeking damages. (*Id*. at ¶¶ 87-88, 94-96).

Because Plaintiff's claim for breach of contract arises from Defendants' breaches of the Release Agreement, it is clear that Ohio law applies to the analysis of whether or not Plaintiff has adequately plead its claim. Section 11 of the Release Agreement states that the Release Agreement and "any dispute arising therefrom shall be governed by the laws of the state of Ohio." (Exhibit D to Pl. Compl. at p. 6, Section 11); *see also*, *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (discussing law to apply in diversity cases addressing breach of contract claims).

Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach. *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012) (citing *Savedoff v. Access Grp., Inc.,* 524 F.3d 754, 762 (6th Cir.2008) (applying Ohio law)). All of the above has been factually and legally plead.

First, Plaintiff has plead the existence of a contract between Plaintiff and Defendants. (Pl. Compl. at ¶¶ 75-78-88, 90-91). Plaintiff has also plead that the Release Agreement (and other agreements that will secondarily be at issue) "were clear and definite, made by mutual assent and supported by adequate consideration." (*Id*. at ¶92). If there were any dispute about the above, Plaintiff attached and incorporated all the executed agreements – the Release Agreement, Loan Agreement, Side Letter Agreement, and Warrant – to its Complaint. (*See* Exhibit A-D of Pl. Compl.; Pl. Compl. at ¶¶ 26, 32-33, 75).

22

Second, Plaintiff has alleged that it "performed all of [its] obligations under the …
Agreements, including the Release Agreement, and [has] not materially breached any of the terms
of any of the parties Agreements," which includes the Release Agreement.  (Pl. Compl. at ¶ 92).

Third, Plaintiff alleges Defendants obligations under the Release Agreement and that
Defendants breached their obligations under Release Agreement.    (Pl. Compl. at ¶¶ 75-77, 80-
88, 93-95; *see e.g.*, *id* at ¶¶ 36-49). Spelled out specifically, Plaintiff's Complaint clearly and
conspicuously incorporates the terms and provisions of the Release Agreement.  (*Id.* at ¶ 75
(incorporating the terms of the Release Agreement)).  The Release Agreement expressly states
that Defendant CSA Biotechnologies, LLC promises, represents, and warrants that the transaction
any of Defendants entered into with the Central Garden & Pet Company "…did not breach any
material term of the [Warrant] provided to [Plaintiff] in connection with the Loan Agreement or
agreement with respect thereto…". (*Id.* at ¶¶ 49, 77, 92, 95; Exhibit D to Pl. Compl., ECF No. 2-
8, Section 2.b.iii).  Plaintiff has reviewed the documents Defendants provided related to the
transaction entered into with Central Garden & Pet Company, and Plaintiff believes such
documents clearly demonstrate a breach of the terms of the Warrant, Loan Agreement, and Side
Letter Agreement related to the Warrant <u>in direct violation of Section 2.b.iii of the Release
Agreement</u>.  (Pl. Compl. at ¶ 81-87, 93-94). For example, Bovine Biotech, LLC no longer
directly holds the Bovine Rights.  (*Id.* at ¶¶ 38, 83).

Moreover, Plaintiff claims the Release Agreement requires that Defendants "provide
Plaintiff all final agreements, articles of organization/incorporation, operating agreements, and/or
other operative documents related to the transaction with" Central Garden & Pet Company. (*Id.* at
¶¶ 76, 93.i). Defendants breached the Release Agreement because Plaintiff believes they "still
have not provided Plaintiff all the" documents "to which it is entitled" under the Release
Agreement.  (*Id.* at ¶¶ 80, 88.b.iii, 96).

Finally, Plaintiff sufficiently alleges damages. (*Id.* at ¶¶ 88, 96). First, Plaintiff claims monetary, contractual, and equitable damages related to the devaluation of the Warrant as a result of the transaction with Central Garden & Pet Company. Plaintiff states Defendants induced Plaintiff to withhold objecting to or blocking the transaction with Central Garden & Pet Company based on the terms promises, representations, and warranties in the in the Release Agreement – specifically that the transaction with Central Garden & Pet Company did not violate the an material terms of the Loan Agreement, Side Letter Agreement, or Warrant related to the Warrant. (*Id.* at ¶¶ 72-80). The transaction with Central Garden & Pet Company shows that, among other things, Bovine Biotech, LLC no longer directly holds the Bovine Rights, which is what provided nearly all the economic value to the Warrant. (Pl. Compl., at ¶¶ 38, 83-85, 87). Because the Bovine Rights, which gave the Warrant value, have been transferred and Bovine Biotech, LLC no longer directly holds the Bovine Rights, Plaintiff and its rights related to the Warrant have been substantially damaged. Additionally, Plaintiff also seeks contractual relief under the terms of the parties agreements related to the Warrants. (*Id.* at ¶¶ 88, 96). Finally, Plaintiff seeks relief in the form of forcing Defendants to produce all documents required to be produced related to the transaction with Central Garden & Pet Company under the Release Agreement. (*Id.*).

The above shows that Plaintiff has more than sufficiently plead its breach of contract claims and that Defendants' motion to dismiss for failure to state a claim for breach of contract should be denied.

## E. Plaintiff has Properly Plead Its Claims For Fraudulent and Negligent Misrepresentation.

Finally, Defendants' argue that Plaintiff's fraud/misrepresentation claims fail to comply with Fed. R. Civ. P. 8(a) and Fed. R. Civ. P. 9(b). A simple review of the allegations in the Complaint reveals the specious nature of that argument.

24

To meet the particularity requirement of Rule 9(b), a plaintiff who brings a fraud claim must generally "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Lifelink Pharmaceuticals, Inc. v. NDA Consulting, Inc.*, N.D.Ohio No. 5:07-CV-785, 2007 WL 2292461, *2 (Aug. 7, 2007), citing *Sanderson v. HCAThe Healthcare Co.,* 447 F.3d 873, 877 (6th Cir.2006). Although allegations of "who, what, when, where, and how" must be pleaded, "Rule 9(b) is deemed satisfied if the allegations are accompanied by a statement of facts on which the belief is founded." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783-84 (8th Cir. 2009).

Plaintiff's 30-page, 107-paragraph Complaint easily meets that test, and puts Defendants on notice of the claims against them. Because the fraud allegations satisfy Fed. R. Civ. P. 9(b), it necessarily follows that they also comply with Fed. R. Civ. P. 8(a).

Specifically, the Complaint alleges:

> 100.    Defendants knowingly made false representations to Plaintiff regarding, and or failed to disclose, material facts related to the Completed Central Transaction with respect to the Warrants.

> 101.    Particularly, in December 2014 and early 2015, Defendants falsely represented to Plaintiff that they would "restructure" the Central Fundamental Transaction such that it was not a Fundamental Transaction under the Warrants.

> 102.    In February 2015, Defendants, including Mike Moore individually and in his capacity as CSAB, represented and warranted that the Completed Central Transaction did not violate the terms of the Warrant, Loan Agreement, Side Letter Agreement and did not affect the Warrant.

> 103.    The above representations and warranties are false.

Based on the allegations described above, among others in Plaintiff's Complaint, Defendants are on notice of who made the false representations, what was said, and when they

were made.  Statements were made in December 2014 and early 2015 by Defendants regarding

the Central Fundamental Transaction, Warrants, Loan Agreement, and Side Letter Agreement.

Plaintiff further alleged that:

> 102.    Knowing that the Completed Central Transaction violated the
> terms of the Warrant, Loan Agreement, Side Letter Agreement and
> effect the Warrant all Defendants remained silent and fraudulently
> omitted telling Plaintiff that the Completed Central Transaction violated
> the terms of the Warrant, Loan Agreement, Side Letter Agreement and
> effect the Warrant
>
> 103.    Defendants intended for Plaintiffs to rely, and Plaintiff did rely to
> its determent on Defendants materially false representations and
> omissions in connection with the Central Fundamental Transaction and
> Completed Central Transaction in order to induce Plaintiff to enter into
> the Release Agreement.

(*See also*, Pl Complaint at ¶¶ 34-49).  Again, Plaintiff's Complaint sufficiently sets forth facts,

with the required particularity, supporting a claim for fraud/misrepresentation against

Defendants.

Despite Defendants' contention, this is not a situation where Plaintiff slapped together a

few allegations and called it a fraud claim.  An example of such a situation can, however, be

found in a case cited by Defendants.  *See Coomes v. Allstate Ins. Co.*, S.D.Ohio No. 1:10-CV-

905, 2011 WL 4005325, *8 (Aug. 9, 2011) *report and recommendation adopted*, S.D.Ohio No.

C-1-10-9052011 WL 4007341 (Sept. 8, 2011).  Unlike in *Coomes*, where the plaintiff's complaint

consisted of a mere ***six sentences***, the Complaint at issue in this case consists of 107 paragraphs

of detailed factual allegations against Defendants that plainly state claims for relief.  The

multitude of defendants does nothing to distract from the simple fact the Complaint details

specific wrongful conduct as to all defendants.

Defendants also argue that Plaintiff has failed to adequately plead *scienter*.  Not so.

While Plaintiff must still set forth facts giving rise to an inference of *scienter*, "[t]he requirement

26

for pleading scienter is less rigorous than that which applies to allegations regarding the 'circumstances that constitute fraud' because 'malice, intent, knowledge, and other condition of mind of a person may be averred generally.' "  Fed.R.Civ.P. 9(b); *In re Actimmune Marketing Litigation*, 614 F.Supp.2d 1037, 1048 (N.D.Cal.2009).  Defendants point to ¶¶ 102 and 104, but conveniently omit ¶103, which provides:

> Defendants intended for Plaintiffs to rely, and Plaintiff did rely to its determent on Defendants materially false representations and omissions in connection with the Central Fundamental Transaction and Completed Central Transaction in order to induce Plaintiff to enter into the Release Agreement.

(*See also*, Pl. Compl. at ¶ 107). The Complaint expands in great detail regarding the misrepresentations that occurred in connection with the transaction with Central Garden & Pet Company and Release Agreement.

Defendants also argue that Plaintiff has failed to allege causation and damages relating to the devaluation of the Warrant.  (Motion, p. 10, Doc. # 5)  However, this argument requires Defendants to ignore the section of the Complaint labeled "**Harm to the Warrant By the Central Transaction**."  [Emphasis in original.]  Importantly, there are 13 paragraphs that explain in painstaking detail the factual foundation and connection between Defendants' fraud and the devaluation of the Warrant.  In fact, ¶62 provides a succinct explanation of what Defendants claim is missing.  Also, Plaintiff specifically alleged the harm at Paragraphs 81-88.

Defendants also claim that Plaintiff has failed to adequately plead justifiable reliance. The "issue of whether a party's reliance was justifiable * * * is largely a question of fact inappropriate for resolution on a motion to dismiss."  *In re Nat'l Century Financial Enters., Inc. Investor Litigation* (S.D. Ohio 2008), 580 F.Supp.2d 630, 653 (citing *Bass v. Janney Montgomery Scott, Inc.* (6th Cir.2000), 210 F.3d 577, 590; *see also Davis v. Montenery,* 173 Ohio App.3d 740, 752, 880 N.E.2d 488, 497 (Ohio Ct.App.2007) ("[A] determination regarding justifiable reliance

27

involves a fact-based inquiry into the circumstances of the claim and the relationship between the parties.").

Even if it was an issue appropriate for a motion to dismiss, and it is not, Plaintiff's Complaint sufficient alleges facts showing it relied on Defendants' representations. (*see* Pl. Compl. at ¶¶ 103, 107). And the other allegations in Plaintiff's Complaint establish Plaintiff's reliance was justified and reasonable based on the express conduct, warranties, representations, and promises Defendants made to Plaintiff. (*Id*. at ¶¶ 100-106). At the very least, these allegations give rise to a question of fact as to whether Plaintiff justifiably relied on Defendants' misrepresentations. Certainly, the above allegations show that Plaintiffs reasonably believed that Defendants were restructuring the Central Fundamental Transaction, and that the Completed Central Transaction did not violate the terms of the Warrant, Loan Agreement, or Side Letter Agreement.

Based on the above, Plaintiff's Complaint sufficiently alleges facts supporting claims for fraud and misrepresentation.

**F.** **Alternatively, In The Unlikely Event The Court Finds Any Deficiencies With Plaintiff's Complaint, Plaintiff Seeks Leave To Amend.**

To the extent necessary, pursuant to Fed. R. Civ. P. 15(a)(2), Plaintiff seeks leave to file an amended complaint to cure any defects within its original Complaint. The amendment requested will not be futile. Moreover, the statute of limitations for the claims Plaintiff seeks to amend has not expired, and discovery has not yet commenced. Also, Defendants will not be prejudiced in any way by the requested amendment.

The requested leave to amend is also appropriate because Plaintiff has not delayed seeking leave to amend and has filed its motion within the time agreed upon by the parties for amendments to pleadings. (*See* ECF No. 10). Finally, Plaintiff's motion satisfies all the

28

requirements of Rule 15.  Accordingly, Plaintiff respectfully submits that its request for leave should be granted.

The law supports Plaintiff's request.  Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that parties may amend their pleading by leave of court, and that leave shall be freely given when justice so requires.  "In the absence of any apparent or declared reason-- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. -- the leave sought should … be freely given."  *Foman v. Davis*, 371 U.S. 178, 182 (1962) (internal quotations omitted); *see also, Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir.1994); *Duggins v. Steak 'n Shake, Inc*., 195 F.3d 828, 834 (6th Cir. 1999).

In order to deny a motion to amend, a court must find "at least some significant showing of prejudice to the opponent."  *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir.1986).  In this case, no prejudice will result to any party.  This case is still in the early stages. Indeed, the Rule 16 conference with the Court has not occurred and Defendants have not served any discovery on Plaintiff.  Furthermore, given that the amended complaint will is based on the same alleged conduct and facts, Defendant will not suffer any prejudice by virtue of this Court granting Plaintiff leave to file its amended complaint.

Therefore, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure,  Plaintiff respectfully requests, only to the extent necessary, leave to file an amended pleading within 21 days of any order granting Plaintiff's request.

## V.    <u>**CONCLUSION**</u>

For all of the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety.  Alternatively, Plaintiff should be granted leave to amend and cure any pleading defects with respect to the claims in its Complaint.

Respectfully submitted,

/s/Adam P. Richards

Charles H. Cooper, Jr.      (0037295)
chipc@cooperelliott.com
Rex H. Elliott              (0054054)
rexe@cooperelliott.com
Adam P. Richards            (0085335)
adamr@cooperelliott.com
Cooper & Elliott, LLC
2175 Riverside Drive
Columbus, Ohio 43221
(614) 481-6000
(614) 481-6001 (Facsimile)

Attorneys for Plaintiff
Empire Advisors, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss was filed electronically and served electronically on the following counsel of record, this 8th day of January, 2016:

> Thomas L. Rosenberg, Esq.
> Roetzel & Andress
> 155 East Broad Street
> 12th Floor
> Columbus, Ohio 43215
>
> Christine M. Garritano, Esq.
> Roetzel & Andress
> 1375 East 9th Street
> 9th Floor
> Cleveland, Ohio 44114
>
> Richard R. Thomas, Esq. (*PRO HAC VICE* )
> Smith, LC
> 4505 East Chandler Boulevard
> Suite 290
> Phoenix, Arizona 85048
>
> Attorneys for Defendants

/s/Adam P. Richards