# **DECLARATION OF DAVID J. RICHARDS**

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **Empire Advisors, LLC,** : | |
| : | Case No. 2:15-cv-3022 |
| **Plaintiff,** : | |
| : | Judge Watson |
| v. : | |
| : | Magistrate Judge Kemp |
| **CSA BioTechnologies, LLC, et al.,** : | |
| : | |
| **Defendants.** : | |

**DECLARATION OF DAVID J. RICHARDS IN SUPPORT OF MEMORANDUM
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER
FED. R. CIV. P 12(b)(1) AND 12(b)(3)**

I, David J. Richards, hereby declare as follows:

1. I am the Managing Director and President of Plaintiff, Empire Advisors, LLC.

2. I am also the acting Chief Executive Officer of N8 Medical, Inc. ("N8 Medical").

3. I have more than 30 years' experience in financial transactions.

4. The information contained herein is based on my own personal knowledge of the matters set forth herein.

5. Plaintiff is an Ohio limited liability company.  Plaintiff is a management entity for midmarket private equity and venture funds that opportunistically invest in a broad range of business sectors in debt, equity and mixed transactions.

6. The present dispute has roots in a larger transaction between certain of the Defendants and a company known as N8 Medical.  I am personally aware of the details underlying the transaction with N8 Medical.

7. The transaction between N8 Medical and certain of the Defendants related to the purchase of all the shares of a former affiliate of N8 Medical known as N8 Pharmaceuticals, Inc. In connection with that transaction, CSA Biotechnologies, LLC and certain of the other

Defendants in this action agreed to pay approximately $15 million for, among other things, the purchase of N8 Pharmaceuticals, Inc.'s stock ("stock purchase transaction").

8. Sometime around early 2013, Defendant CSA Biotechnologies, LLC approached Plaintiff about extending the payment due date and obtaining financing to satisfy the payments due in connection with the "stock purchase transaction."

9. After discussions, Plaintiff agreed to negotiate, and did negotiate, an extension of the payment due. Plaintiff also agreed to manage, locate, and place the financing of approximately $10 million certain of the Defendants needed to satisfy their obligations pursuant to the stock purchase transaction. Finally, Plaintiff agreed to directly participate in providing funding for the loan. (collectively, the "Services").

10. In connection with Plaintiff performing the Services, among others, all the Defendants involved in this litigation entered into an Amended Loan Agreement with Plaintiff (the "Loan Agreement").

11. In order to secure the $10 million needed under the Loan Agreement, Plaintiff made a secured debt offering to Plaintiff's investors, as well as materially participated directly in such offering as a principal.

12. Because the funds for the loan under the Loan Agreement came from multiple sources, including Plaintiff, in order to simplify matters regarding the administration and management of loan and sources of funding, as specified in Section 6 of the Loan Agreement, Plaintiff was appointed at the agent and manager with respect to the loan, and notes and other collateral securing the loan, being provided under the Loan Agreement.

13. Additionally, simultaneously in connection with execution of the Loan Agreement, Plaintiff and *all* the Defendants entered into the "Side Letter Agreement," which

delivered to Plaintiff, among other things, a warrant[1] in Defendant Bovine Biotech, LLC (the "Warrant").

16. 14. The Warrant was not part of the notes and other collateral securing the loan referenced in Section 6 of the Loan Agreement or Paragraph 12 of this Declaration.

15. As specified in the Side Letter Agreement, the Warrant was consideration provided to *Plaintiff* for its services for its investment and managing and arranging the transaction the resulted in the execution of the Loan Agreement. In fact, the Side Letter Agreement, which was executed by Plaintiff and all Defendants simultaneously with the Loan Agreement and delivered the Warrant, expressly states that as consideration for certain "Services" Plaintiff completed in connection with the Loan Agreement, the Warrant was being paid, granted, and delivered to Plaintiff.

16. The Warrant and rights related thereto were delivered to Plaintiff as required by the Side Letter Agreement.

17. The Warrant and agreement delivering the Warrant to Plaintiff expressly specify that Plaintiff is the holder of the Warrant and the party that holds and has the ability to exercise all legal rights related thereto.

18. In addition to the legal rights related to the Warrant, Plaintiff has a financial and beneficial interest in the Warrant.

19. In sum, Plaintiff is a legal, rightful, and beneficial owner/holder of the Warrant. As the legal, rightful and beneficial owner/holder or the Warrant, Plaintiff has a substantial legal and

---

[1] Generally, a "warrant" is a type of investment security that gives the holder the right to purchase securities (usually equity) from the issuer of the warrant at a specific price within a certain set time. A warrant is similar to a call option in that it provides the holder of the warrant an option to purchase equity in a company at certain set price for a set time-period regardless of the increase or decrease in the company's value. The main difference between warrants and call options are that warrants are issued and guaranteed by the company, whereas options are exchange instruments not issued by the company. In addition, as in this case, the lifetime of a warrant is often measured in years, as opposed to a call option, which is typically measured in months.

financial interest in the subject matter of this dispute.  Indeed, if there is any harm to the Warrant (financial or otherwise), Plaintiff is damaged.

20. Further, in connection with the above transaction providing the loan and delivering the Warrant, Defendants made various express material representations, promises, and warranties to Plaintiff related to the Warrant.

21. The original express material representations, promises, and warranties to Plaintiff related to the Warrant were made in the Side Letter Agreement, the Loan Agreement, and the Warrant itself.

22. One of the most critical representations, promises, and warranties made to Plaintiff related to the Warrant was that Defendant Bovine Biotech, LLC "holds, ***and shall continue to hold***, the rights on a world-wide, exclusive basis, to all rights for the treatment of bovine mastitis" using ceragenins ("Bovine Rights").  It was extremely critical that Defendant Bovine Biotech, LLC held and continued to hold all of the Bovine Rights because Bovine Biotech, LLC's direct ownership of the Bovine Rights is what gave all the value to the Warrant.

23. If the Bovine Rights that provided substantial value to the Warrant were transferred to any third-party, Plaintiff is entitled to seek equitable relief in the form of a new warrant that shall "extend and apply in full, with respect" to the "entity" the Bovine Rights were transferred and/or sue for damages.

### TRANSFER OF BOVINE RIGHTS AND RELEASE AGREEMENT

24. In early 2015, Defendants sought to repay all amounts borrowed under the Loan Agreement (the "Loan Payoff").

25. In connection with the Loan Payoff, Plaintiff and Defendants entered into a "Release Agreement."

26.     Plaintiff's negotiation and execution of the Release Agreement, occurred in Columbus, Ohio. Moreover, Defendants made the representations, promises, warranties, covenants to Plaintiff at issue in this lawsuit while Plaintiff was in Columbus, Ohio. As such, and for other reasons, a substantial part of the acts, events and omissions giving rise to the claims in the above-captioned lawsuit occurred in Columbus, Ohio.

27.     The parties' negotiation and execution of the Release Agreement was a complex transaction itself because of a disagreement that existed between Plaintiff and Defendants at the time.

28.     I am personally aware of the nature of the disagreement referenced in Paragraph 27. Namely, in late 2014, Plaintiff discovered that some or all of the Defendants were contemplating entering into a transaction with a public company known as Central Garden & Pet Company that violated the Warrant, Side Letter Agreement, and Loan Agreement.

29.     Plaintiff objected to the transaction with Central Garden & Pet Company. In response, Defendants initially stated that they would "restructure" the contemplated transaction with Central Garden & Pet Company such that it would not violate the Warrant, Loan Agreement, or Side Letter Agreement.

30.     Due to the above dispute, in early 2015, when Defendants sought to complete the Loan Payoff, Plaintiff first wanted to understand the terms of any transaction one or all the Defendants were considering entering into or had already entered into with Central Garden & Pet Company.

31.     As such, Plaintiff inquired as to the terms and status of the transaction prior to agreeing to the Release Agreement.

32. In response to Plaintiff's inquiries, however, Defendants declined to provide specific documentation regarding the actual or contemplated terms of the transaction with Central Garden & Pet Company.

33. In essence, rather than provide any documents or information on the transaction with Central Garden & Pet Company, Defendants response was "trust us," we have restructured the transaction as we promised and it does not violate the terms of the Warrant, Loan Agreement, or Side Letter Agreement, and did not devalue the Warrant.

34. Because Defendants refused to present Plaintiff with any documents demonstrating that the actual or contemplated transaction with Central Garden & Pet Company did not violate the Warrant, Loan Agreement, or Side Letter Agreement, Plaintiff required certain specific provisions be included in the Release Agreement.

35. The material terms Plaintiff required to be included in the Release Agreement included provisions: (i) mandating venue in Ohio related to any breaches of the Release Agreement or "any dispute arising therefrom;" (ii) demanding Defendants provide certain documents and materials related to any transaction with the Central Garden & Pet Company; and (iii) requiring Defendant CSA Biotechnologies, LLC to expressly reconfirm its promises, warranties, and representations related to the Warrant and confirm, promise, represent, and warrant that any transaction actually entered into with the Central Garden & Pet Company "(a) … did not breach any material term of the [Warrant] provided to [Plaintiff] in connection with the Loan Agreement or agreement with respect thereto…, and (b) that the [Warrant] shall continue in full force and effect pursuant to the terms thereof."

36. Since entering into the Release Agreement, Plaintiff has reviewed documents Defendants eventually provided related to the transaction entered into with Central Garden & Pet Company. Plaintiff believes such documents clearly demonstrate a breach of the terms of the

Warrant, Loan Agreement, and Side Letter Agreement related to the Warrant in direct violation of Section 2.b.iii of the Release Agreement.

37. Plaintiffs also believe the Central Garden & Pet Company transaction devalued the Warrant substantially and Defendants' actions in refusing to provide Plaintiff with information regarding the Central Garden & Pet Company transaction was purposeful. Indeed, it prevented Plaintiff from blocking the transaction, asserting its contractual rights, or preventing harm to the Warrant.

38. Plaintiff also is concerned that Defendants have withheld documents to mask even further violations of the material representations, promises, and warranties made regarding the Warrants.

39. Pursuant to 28 USC § 1746, I declare, certify, verify, and state under penalty of perjury that the foregoing is true and correct.[2]

Executed on this 8th day of January, 2015.    _____
David J. Richards

---

[2] This Declaration is not intended to discuss or recite all facts relevant to or at issue in this lawsuit. Nor is it a complete expression of all the facts and breaches contract, promises, or representations alleged by Plaintiff.  The purpose of this Declaration is to address certain discrete issues raised in Defendants' motion to dismiss.  Any attempt to construe this Declaration as a comprehensive statement of facts or otherwise is contrary to my intentions. This document does not intend to set forth all, or even most, of the facts related to Plaintiff's action or claims. Any omission, intentional or unintentional, of any fact, statement or claim shall not be construed as a waiver or admission that such fact, statement, or claim does not exist, is not true, or is not part of the subset of claims Plaintiff is pursuing in this litigation.  In fact, many facts that will ultimately be relevant to this dispute have been intentionally omitted to avoid presenting a very lengthy declaration of facts unnecessary to the sole purpose of this Declaration, which is responding to specific and limited issues in Defendants' motion to dismiss.